12 F.3d 1270
 62 USLW 2425
 FEDERAL INSURANCE COMPANY, Subrogee of Mutual Group, Ltd.,
N.R.G. America Holding Company d/b/a Philadelphia
Reinsurance Company, N.R.G. American Holding Company d/b/a
N.R.G. American Life, Wertheim Schroder & Co., Inc., Paine
Webber Group, Inc., Goldman Sachs & Company, Scudder,
Stevens & Clark, Inc., Pitcairn Private Bank, the Palmieri
Company, 1838 Investment Advisors, Eastern Telelogic, Mark
Goldman, as Executor of the Estate of Herbert Goldman,
Joseph Fillmore, Paul Marino, William Wall, Edward F.
Mannino, Patricia J. Myers, Lewis Cohen, Jay Alchin, Mary
Kenney, Richard Atcavage; Vigilant Insurance Company,
Subrogee of Edward F. Mannino & Associates, P.C., Bernard
Heinzen, Philip Leicht, George Hundt, Joseph L. Pyle, Julian
A. Brodsky, John Davison, Jr., Paul M. Yeakel; Sun
Insurance Office, Ltd., Subrogee of George M. Ross, Timothy
Sennatt, Robert Allen, Thaddeus R. Shelly, III, Clarence A.
McGowan, Jr., Fielding Lamason, Glenn Partridge, William
Thorkelson, III, William McCoy, George Hawke, Kathleen
MacGregor, Brian Gibbons, Michael Satzburg; the Continental
Corporation, Subrogee of Bazelon & Less, Gregory Alexander,
Esquire, Robert McLean, Sharon McGeehan and Dennis Dean;
Aetna Life and Casualty Insurance Company, Subrogee of
Prudential Insurance Company; Pennsylvania Manufacturers'
Association, Subrogee of M. Kowalchik and Associates; West
American Insurance Company, Subrogee of Elliott, Bray &
Riley, P.C.; Royal Insurance Company, Subrogee of Meridian
Bancorp, Inc., Pegalis & Wachsman, P.C., Donald Goldberg,
Esquire, the Royal Bank of Pennsylvania; USF & G
Corporation, Subrogee of John Gerard Devlin, Esquire;
American Home Assurance Company, Subrogee of Barnes & Noble
Bookstores, Inc. d/b/a B. Dalton Bookstore, Barnes & Noble
Bookstores, Inc. d/b/a Barnes & Noble Book Store; National
Union Fire Insurance Co. of Pittsburgh, Pennsylvania,
Subrogee of Prudential Insurance Company; Allianz
International Insurance Company, Ltd., Subrogee of Goldman
Sachs & Company; Underwriters at Lloyd's of London,
Subrogee of Prudential Insurance Company; One World Trade
Center; Sun Insurance Company, Subrogee of U.S. Life
Corporation; Marine Indemnity Insurance Company, Subrogee
of U.S. Life Corporation
v.
RICHARD I. RUBIN & CO., INC.; E/R Associates; Equitable
Life Assurance Society of the United States; USA One
Associates; USA One B.V.; USA Two B.V.; Rodin Investment
Administration Company; Algemeen Burgerlijk Pensioenfonds;
USA Holdings B.V.; Equitable Real Estate Investment
Management, Inc.; Jones Lange Wootton USA; Pan American
Office Investments, Inc.; Balis & Co., Inc.; Marsh &
McLennan Companies, Inc.; Nason and Cullen, Inc.;
American Building Maintenance Company of New York; Penn
Sprinkler Company, Inc.; Delmont Fire Protection Service,
Inc.; National Guardian Security Services Corporation; M &
M Equipment Company; Joseph F.X. Griffin; Giacomini,
S.P.A.; Sheward Henderson Associates; Beer Associates;
Buten, M. & Sons, Inc., T/A "Buten the Paint and Paper People"
v.
HALPRIN SUPPLY COMPANY, INC.; Sierra Fire Equipment Co.;
Underwriters Laboratories, Inc.; Premier Industrial
Corporation; Task Force Tips, Inc.; Maris Equipment
Company; the Energy Consortium, Inc.; Honeywell, Inc.;
Pyrotrol Systems, Inc., Division of Potter Electric Signal
Company; Webster Automation Systems, Inc.; John Ashe
Associates, Inc.; H.B. Frazer and Co., Inc.; MMR/Foley
Division of Matthews-McCracken-Rutland Corp., Third-Party
Defendants.
USA Holding BV and Algemeen Burgerlijk Pensioenfonds,
Appellants in No. 93-1157.
In re ONE MERIDIAN PLAZA FIRE LITIGATION. Eight Cases.
John M. CORCORAN; and C.W.D. Enterprises Ltd., d/b/a Chris'
Cafe and Bar; Ejay Travel, Inc., Plaintiffs for
Themselves and All Others Similarly Situated
v.
RICHARD I. RUBIN & CO., INC.; E/R Associates, t/a One
Meridian Plaza; Equitable Life Assurance Society of the
United States; USA One Associates; USA One B.V.; USA Two
B.V.; Pan American Office Investments, Inc.; Rodin
Investment Administration Company; Algemeen Burgerlijk
Pensioenfonds; Equitable Real Estate Investment Management,
Inc.; Aetna Casualty & Surety Company; Aetna Life
Insurance Company; Jones Lange Wootton USA; Balis & Co.;
Penn Sprinkler Company, Inc.; Delmont Fire Protection
Service, Inc.; American Building Maintenance Company;
National Guardian Security Services, Corp.; Joseph F.X.
Griffin, Third-Party Plaintiffs,
v.
HALPRIN SUPPLY COMPANY, INC.; Sierra Fire Equipment Co.,
Rubinetterie A. Giacomini S.P.A.; Underwriters
Laboratories, Inc.; Premier Industrial Corporation, t/a
Akron Brass Company; Task Force Tips, Inc.; Maris
Equipment Company; the Energy Consortium, Inc.; Honeywell,
Inc.; Pyrotrol Systems Inc., Division of Potter Electric
Signal Company; Webster Automation Systems, Inc.; John
Ashe Associates, Inc.; H.B. Frazer and Co., Inc.; Nason &
Cullen, Inc.; Sheward Henderson; MMR/Foley Division of
Matthews-McCracken-Rutland Corp.; Morris-Rospond
Associates, Inc., a/k/a Morris Rospond Group and/or the
Energy Consortium, Inc.; M & M Equipment Company; Tabor
Acoustical, Inc.; Oreland Sheetmetal, Inc., Third-Party Defendants.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1474.
ELLIOTT & BRAY, P.C.; Nancy Dembowski; Virginia L. Grandy;
T. Sean Crumlish; Constitution Bancorp., N.A.,
Plaintiffs, for Themselves and All Others Similarly Situated
v.
RICHARD I. RUBIN & CO., INC.; E/R Associates, t/a One
Meridian Plaza; the Equitable Life Assurance Society of the
United States; USA One Associates; USA One B.V.; USA Two
B.V.; Pan American Office Investments, Inc.; Rodin
Investment Administration Company; Algemeen Burgerlijk
Pensioenfonds; Equitable Real Estate Investment Management,
Inc.; Aetna Casualty & Surety Company; Aetna Life
Insurance Company; Jones Lange Wootton USA; Balis &
Co.; Penn Sprinkler Company, Inc.; Elmont Fire Protection
Service, Inc.; John Does # 1 Through # 77, (Defendants
whose identities are currently unknown to Plaintiffs).
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1475.
Louis J. BOUNDONNA; Robert Allen, on Behalf of Themselves
and All Others Similarly Situated
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES;
E/R Associates, t/a One Meridian Plaza; Algemeen
Burgerlijk Pensioenfonds; Penn
Sprinkler Company, Inc.;
Richard I. Rubin & Co., Inc.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1476.
LEGXPRESS, INC.; Pennsylvania Square Corp.
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES;
E/R Associates, t/a One Meridian Plaza; Algemeen
Burgerlijk Pensioenfonds; Richard I. Rubin & Co., Inc.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1477.
REGENT INC. OF 15TH STREET d/b/a Giorgio Brutini, on Behalf
of Itself and All Others Similarly Situated*
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES;
E/R Associates, t/a One Meridian Plaza; Algemeen
Burgerlijk Pensioenfonds; Penn
Sprinkler Company, Inc.;
Richard I. Rubin & Co., Inc.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1478.
Anthony VINCIGUERRA, t/a 2 Mellon Bank Center Barber
Services and Styling; Sunshine Personnel, Inc.;
Royal Bank of Pennsylvania, for Itself
and for All Others Similarly Situated
v.
RICHARD I. RUBIN & CO., INC.; E/R Associates, t/a One
Meridian Plaza; the Equitable Life Assurance Society of the
United States; USA One Associates; USA One B.V.; USA Two
B.V.; Pan American Office Investments, Inc.; Rodin
Investment Administration Company; Algemeen Burgerlijk
Pensioenfonds; Equitable Real Estate Investment Management,
Inc.; Aetna Casualty & Surety Company; Aetna Life
Insurance Company; Jones Lange Wootton USA; Balis & Co.;
Penn Sprinkler Company, Inc.; Delmont Fire Protection
Service, Inc.; John Does # 1 Through # 77.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1479.
Robert J. ATLEE; Triumphe Financial Services, for
Themselves and All Others Similarly Situated
v.
RICHARD I. RUBIN & CO., INC.; E/R Associates, t/a One
Meridian Plaza; the Equitable Life Assurance Society of the
United States; USA One Associates; USA One B.V.; USA Two
B.V.; Pan American Office Investments, Inc.; Rodin
Investment Administration Company; Algemeen Burgerlijk
Pensioenfonds; Equitable Real Estate Investment Management,
Inc.; Aetna Casualty & Surety Company; Aetna Life
Insurance Company; Jones Lange Wootton USA; Balis & Co.;
Penn Sprinkler Company; Delmont Fire Protection Service,
Inc.; John Does # 1 Through # 77.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1480.
Jeffrey BERMAN
v.
E/R ASSOCIATES, t/a One Meridian Plaza; Richard I. Rubin & Co., Inc.;
Equitable Life Assurance Society of the United States; Rodin Enterprises;
Pan American Office Investments, Inc.; Rodin Investment
Administration Company; Algemeen Burgerlijk Pensioenfonds;
Equitable Real Estate Investment Management, Inc.; Aetna
Casualty & Surety Company; Aetna Life Insurance Company;
Jones Lange Wootton USA; Balis & Co.; Penn Sprinkler
Company, Inc.; Delmont Fire Protection Service, Inc.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1481.
Mary Y. HOLCOMBE, in her own right and as Administratrix of
the Estate of David P. Holcombe, Deceased
v.
RICHARD I. RUBIN & CO., INC.; E/R Associates, t/a One
Meridian Plaza; Equitable Life Assurance Society of the
United States; Algemeen Burgerlijk Pensioenfonds; Penn
Sprinkler Company, Inc.; Delmont Fire Protection Service,
Inc.; Balis and Co., Inc.; USA One Associates; USA One
B.V.; USA Two B.V.; Rodin Investment Administration
Company; Equitable Real Estate Investment Management;
Jones Lange Wootton USA; Pan American Office Investments,
Inc.; American Building Maintenance Company; National
Guardian Security Systems; Joseph F.X. Griffin; M & M
Equipment Company
v.
HALPRIN SUPPLY COMPANY, INC.; Sierra Fire Equipment Co.;
Rubinetterie A. Giacomini S.P.A.; Underwriters
Laboratories, Inc.; Premier Industrial Corporation, t/a
Akron Brass Company; Task Force Tips, Inc.; Maris
Equipment Company, Division of JWP, Inc.; the Energy
Consortium, Inc.; Honeywell, Inc.; Pyrotrol Systems, Inc.,
Division of Potter Electric Signal Company; Webster
Automation Systems, Inc.; John Ashe Associates, Inc.; H.B.
Frazer and Co., Inc.; Nason & Cullen, Inc.;
Sheward-Henderson; MMR/Foley, Division of
Matthews-McCracken-Rutland Corp.; Morris-Rospond
Associates, a/k/a Morris Rospond Group and/or the Energy
Consortium, Inc.; Tabor Acoustical, Inc.; Oreland
Sheetmetal, Inc., Third-Party Defendants.
Algemeen Burgerlijk Pensioenfonds, Appellant in No. 93-1590.
 Nos. 93-1157, 93-1474, 1475, 1476, 1477, 1478, 1479, 1480,
1481 and 93-1590.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 12, 1993.
Decided Dec. 28, 1993.
 
 Stephen A. Cozen (argued), Robert W. Hayes, Cozen & O'Connor, Philadelphia, PA, for appellants Algemeen Burgerlijk Pensioenfonds, USA Holdings BV.
 Kathleen S. Clair (argued), White & Williams, Philadelphia, PA, for appellees in No. 93-1157, Federal Ins. Co., Subrogee of Mut. Group, Ltd., N.R.G. America Holding Co. d/b/a Philadelphia Reinsurance Co., N.R.G. American Holding Co. d/b/a N.R.G. American Life, Wertheim Schroder & Co., Inc., Paine Webber Group, Inc., Goldman Sachs & Co., Scudder, Stevens & Clark, Inc., Pitcairn Private Bank, The Palmieri Co., 1838 Inv. Advisors, Eastern Telelogic, Mark Goldman, As Executor of the Estate of Herbert Goldman, Joseph Fillmore, Paul Marino, William Wall, Edward F. Mannino, Patricia J. Myers, Lewis Cohen, Jay Alchin, Mary Kenney, Richard Atcavage, Vigilant Ins. Co., Subrogee of Edward F. Mannino & Associates, P.C., Bernard Heinzen, Philip Leicht, George Hundt, Joseph L. Pyle, Julian A. Brodsky, John Davison, Jr., Paul M. Yeakel, Sun Ins. Office Ltd., Subrogee of George M. Ross, Timothy Sennatt, Robert Allen, Thaddeus R. Shelly, III, Clarence A. McGowan, Jr., Fielding Lamason, Glenn Partridge, William Thorkelson, III, William McCoy, George Hawke, Kathleen MacGregor, Brian Gibbons, Michael Satzburg, Continental Corp., Subrogee of Bazelon & Less, Gregory Alexander, Esquire, Robert McLean, Sharon McGeehan and Dennis Dean, Aetna Life & Cas., Subrogee of Prudential Ins. Co., Pennsylvania Mfrs' Ass'n, Subrogee of M. Kowalchik and Associates, West American Ins. Co., Subrogee of Elliott, Bray & Riley, P.C., Royal Ins. Co., Subrogee of Meridian Bancorp, Inc., Pegalis & Wachsman, P.C., Donald Goldberg, Esquire, The Royal Bank of Pennsylvania, USF & G Corp., Subrogee of John Gerard Devlin, Esquire, American Home Assur., Subrogee of Barnes & Noble Bookstores, Inc. d/b/a B. Dalton Bookstore, Barnes & Noble Bookstores, Inc. d/b/a Barnes & Noble Book Store, Allianz Intern. Ins. Co., Subrogee of Goldman Sachs & Co., Sun Ins. Co., Subrogee of U.S. Life Corp., Marine Indem. Ins., Subrogee of U.S. Life Corp., Underwriters at Lloyd's of London, Subrogee of Prudential Ins. Co. Nat. Union Fire Ins. of Pittsburgh, Pennsylvania, Subrogee of Prudential Ins. Co., One World Trade Center.
 James M. Marsh, Hecker, Brown, Sherry & Johnson, Philadelphia, PA, for amicus-appellee in No. 93-1157 Hecker, Brown, Sherry & Johnson.
 Timothy T. Myers, John M. Elliott, Elliott, Vanaskie & Riley, Blue Bell, PA, for amicus-appellees in No. 93-1157, Ejay Travel, Inc., Nancy Dembowski, Virginia L. Grandy, T. Sean Crumlish, Robert Allen, Regent 15th Street d/b/a Giorgio Brutini, Legxpress, Inc., Pennsylvania Square Corp., Anthony Vinciguerra, John M. Corcoran, Sunshine Personnel, Royal Bank of Pennsylvania, Robert J. Atlee, Triumphe Financial Services, CWD Enterprises, Ltd. d/b/a Chris' Cafe & Bar, Happy Rooster, Inc.
 Timothy T. Myers (argued), John M. Elliott, Elliott, Vanaskie & Riley, Blue Bell, PA, Janice Siegel, Berger & Montague, Jodi Isenberg, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Paul R. Rosen, Ann Miller, Spector, Gadon & Rosen, Philadelphia, PA, John J. Mulderig, Brown & Connery, Westmont, NJ, Paul A. Koches, Joseph Brooks, Popham, Haik, Schnobrich & Kaufman, Washington, DC, Charles J. Bloom, Stevens & Lee, Wayne, PA, for appellees in Nos. 93-1474, 93-1475, 93-1476, 93-1477, 93-1478, 93-1479, 93-1480, 93-1481, 93-1590, John M. Corcoran, CWD Enterprises, Ltd., d/b/a Chris' Cafe & Bar, Ejay Travel, Inc., Plaintiffs for themselves and all others similarly situated, Halprin Supply Co., Sierra Fire Equipment Co., Task Force Tips, Inc., Maris Equipment Co., Energy Consortium, Honeywell, Inc., Webster Automation, Sheward Henderson, MMR/Foley, Div. of Matthews-McCracken-Rutland Corp., Morris-Rospond Associates a/k/a Morris Rospond Group a/k/a Energy Consortium, Tabor Acoustical, Inc., Oreland Sheetmetal, Nancy Dembowski, Virginia L. Grandy, T. Sean Crumlish, Constitution Bancorp, Plaintiffs, for themselves and all others similarly situated, Robert Allen, on behalf of himself and all others similarly situated, Legxpress, Inc., Pennsylvania Square Corp., Regent 15th Street, on behalf of itself and all others similarly situated d/b/a Giorgio Brutini, Anthony Vinciguerra t/a 2 Mellon Bank Center Barber Services and Styling, Sunshine Personnel, Royal Bank of Pennsylvania, for itself and or all others similarly situated, Robert J. Atlee, Triumphe Financial Services, for themselves and all others similarly situated, Rubinetterie A. Giacomini S.P.A., Premier Industrial Corporation t/a Akron Brass Co., Pyrotrol Systems Inc., Division of Potter Electric Signal Company, HB Frazer & Co., Inc.
 Alan M. Herman, Feldman, Shepherd, Wohlgelernter & Herman, Philadelphia, PA, for appellee in No. 93-1590, Mary Y. Holcombe, in her own right and as Administratrix of the Estate of David P. Holcombe, Deceased, Appellee.
 John J. Mulderig, Brown & Connery, Westmont, NJ, Paul A. Koches, Joseph Brooks (argued), Popham, Haik, Schnobrich & Kaufman, Washington, DC, for appellee in No. 93-1590, Honeywell, Inc.
 Before: GREENBERG, COWEN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge.
 
 
 1
 These cases arise from the February 23, 1991 fire that engulfed One Meridian Plaza, an office building in Philadelphia, Pennsylvania. The catastrophic fire resulted in substantial destruction of the thirty-eight story office tower, the deaths of three firefighters who responded to the blaze, and lawsuits alleging losses of nearly $600 million. While procedurally distinct, these appeals all raise the same issue: whether the district court properly concluded that two Dutch parent corporations,[1] whose subsidiary owns sixty-five percent of the partnership that owns the office building, are proper defendants under the commercial activity exception to the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. Secs. 1602-1611.
 
 
 2
 The district court ruled that the Dutch parent corporations are amenable to suit under the FSIA commercial activity exception, id. Sec. 1605(a)(2), and because granting the corporations' motion to dismiss would "work fraud or injustice" on the legislative policies of the FSIA. Although raised in the motions to dismiss, the district court declined to address whether the "non-commercial tort" exception, id. Sec. 1605(a)(5), would make the corporations subject to suit in federal district court. We will reverse the district court in all three cases because it erred in its interpretation of the FSIA commercial activity exception.[2]
 
 I. FACTS AND PROCEDURAL HISTORY
 A.
 
 3
 Three separate but related cases have been consolidated in this appeal. In the first case, Docket No. 93-1157, the plaintiffs consist of fourteen insurance companies who have brought a subrogation action against the owners and managers of One Meridian Plaza. With respect to this case, the Federal Insurance plaintiffs allege several theories of liability, including negligence and breach of contract. At issue in this case is whether the district court properly denied the motion to dismiss filed by Algemeen Burgerlijk Pensioenfonds ("ABP") and USA Holding B.V. ("USA Holding"), two of the many owner/manager defendants. For purposes of this opinion, this case will be referred to as the "Federal Insurance litigation."
 
 
 4
 The second case consists of eight docketed appeals[3] in which the "nontenants"[4] have sued the owner/manager defendants on theories of negligence per se, negligence, strict liability, trespass, private nuisance, and public nuisance. At issue in this case is whether the district court properly denied the motion to dismiss filed by ABP. For purposes of this opinion, this case will be referred to as the "class action litigation."
 
 
 5
 In the third case, Docket No. 93-1590, the estate of a firefighter ("Holcombe plaintiff") has sued the owner/manager defendants for economic damages resulting from pain and suffering and wrongful death.[5] At issue in this case is whether the district court properly denied ABP's motion for summary judgment. For purposes of this opinion, this case will be referred to as the "Holcombe case."
 
 
 6
 The owner/manager defendants consist of several U.S. and Dutch entities. These cases concern only the top two rungs in a five-tier Dutch corporate arrangement that was formed to purchase and own a sixty-five percent share in One Meridian Plaza.[6] Defendant ABP is a corporation organized and existing pursuant to the laws of the Netherlands and serves as the Netherlands' general civil employees pension fund. This corporation was created by an act of the Dutch Parliament and maintains its principal place of business in the Netherlands.
 
 
 7
 ABP is the parent corporation of defendant USA Holding, which is also a Dutch corporation with its principal place of business in the Netherlands. USA Holding, in turn, is the parent corporation of two wholly-owned subsidiary defendants, USA One B.V. and USA Two B.V.,[7] which were incorporated "to invest in, purchase, sell, manage, and rent real estate in the United States." Federal Ins. Co. v. Richard I. Rubin & Co., No. 92-4177, 1993 WL 21327, at * 1 (E.D.Pa. Jan. 26, 1993). While USA One B.V. and USA Two B.V. are Dutch corporations, they are general partners in defendant USA One Associates, a Pennsylvania partnership formed to acquire an ownership interest in E/R Associates, a joint venture that owns the One Meridian Plaza building. At its formation, USA One Associates was capitalized with approximately $29,700,000 from USA One B.V. and $300,000 from USA Two B.V.
 
 
 8
 Defendant ABP financed USA One Associates' acquisition of a sixty-five percent interest in E/R Associates through an unsecured loan of $96,300,000 at a market interest rate of ten percent. The loan was executed pursuant to the laws of the Netherlands, and payments were made to ABP in the Netherlands in U.S. dollars. Once USA One Associates acquired its interest in E/R Associates, it retained defendant Rodin Investment Administration Company ("Rodin") to oversee the daily operations of this investment, including making management and operations decisions concerning One Meridian Plaza. Defendant U.S. Alpha, Inc. later replaced Rodin in its capacity to make decisions regarding the management of the building.
 
 B.
 
 9
 In the Federal Insurance litigation case, ABP and USA Holding (jointly the "Dutch parent corporations") moved to dismiss all claims brought against them because they are agencies or instrumentalities of a foreign state, and are immune from suit in the United States because none of the FSIA exceptions waiving immunity is applicable. The motion was made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) for lack of subject matter and personal jurisdiction. The district court denied this motion in an unpublished opinion, finding that the Dutch parent corporations engaged in commercial activity within the meaning of the commercial activity exception to the FSIA. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 5-6. With respect to USA Holding, the district court held that this corporation engaged in commercial activity in the United States, within the meaning of the first clause of this exception, by virtue of its ownership of USA One B.V. and USA Two B.V. Id. at * 5.
 
 
 10
 Turning to ABP, the district court found sufficient commercial activity to relinquish immunity based on two alternative theories. First, the court held that ABP committed acts outside the U.S. " 'in connection with a commercial activity elsewhere that cause[d] a direct effect in the United States.' " Id. (quoting 28 U.S.C. Sec. 1605(a)(2)). Specifically, the court found that ABP's financing of the One Meridian Plaza acquisition through an unsecured loan was sufficient to allow the court to exercise subject matter jurisdiction over ABP pursuant to the third clause of the FSIA commercial activity exception. Id. at * 5-6.
 
 
 11
 Second, the district court concluded that ABP was subject to jurisdiction by "piercing the corporate veil" so as to consider ABP and USA Holding one entity. Id. at * 6. Under this theory, the court found that there was not sufficient evidence to conclude that there was a principal-agent relationship between the two companies, id., but that the corporate veil should be pierced anyway to "avoid fraud and injustice in contravention of [FSIA] legislative policies," id. at * 7. The district court held that dismissing ABP would be unjust because ABP would be using the FSIA to avoid liability as a defendant, while simultaneously reaping the benefits of U.S. law through its investment in subsidiaries owning real estate in the United States. Id.
 
 
 12
 Thus, the district court denied ABP and USA Holding's motion to dismiss in the Federal Insurance litigation case.[8] In the class action litigation, ABP moved the court to dismiss all counts against it for the same reason--because the district court lacked personal and subject matter jurisdiction over it. The court summarily rejected this motion by stating that the "issue has been resolved in an order dated January 26, 1993, denying ABP's motion to dismiss on the same grounds in a related case before this court." In re One Meridian Plaza Fire Litig., 820 F.Supp. 1460, 1491 (E.D.Pa.1993) (citing Federal Ins. Co., No. 92-4177, 1993 WL 21327). In the Holcombe case, ABP filed a motion for summary judgment on the ground that the district court had no subject matter jurisdiction because ABP's activities did not fall into any of the FSIA exceptions. The district court denied this motion in an order dated May 24, 1993 without opinion or reference to the earlier related dispositions.
 
 II. JURISDICTION
 A. Jurisdiction of the District Court
 
 13
 These cases were brought by various plaintiffs against the owner/manager defendants, which include the Dutch parent corporations. The parties do not dispute that ABP and USA Holding are agencies or instrumentalities of the Dutch government, and the district court found that both are foreign sovereigns as contemplated by the FSIA. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 2-3. Thus, the district court had jurisdiction over all claims against ABP and USA Holding, which are agencies or instrumentalities of a foreign sovereign, pursuant to 28 U.S.C. Sec. 1330. See Rex v. Cia. Pervana de Vapores, S.A., 660 F.2d 61, 64-65 (3d Cir.1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982). The district court had supplemental jurisdiction over all other claims pursuant to 28 U.S.C. Sec. 1367. In this appeal, the Dutch parent corporations contend that the district court improperly denied their motions to dismiss or for summary judgment on the grounds of immunity from suit conferred by the FSIA. The parties disagree as to whether this court has appellate jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 B. Appellate Jurisdiction
 
 14
 Ordinarily, we review only "final" decisions of the district court under 28 U.S.C. Sec. 1291. United States v. Santtini, 963 F.2d 585, 591 (3d Cir.1992). A decision is final only when there is a "decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " Id. (quoting Van Cauwenberghe v. Biard, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988)). However, the Dutch parent corporations contend that the orders denying their motions to dismiss or for summary judgment are appealable as of right under the "collateral order" doctrine articulated in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949).
 
 
 15
 We may exercise jurisdiction over interlocutory appeals, such as the present cases, under the collateral order doctrine only if the order " ' conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment.' " Kulwicki v. Dawson, 969 F.2d 1454, 1459 (3d Cir.1992) (quoting Nixon v. Fitzgerald, 457 U.S. 731, 742, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982)). The case must also present a "serious and unsettled" legal question. Id. (quoting Nixon ).
 
 
 16
 While recognizing that this court adheres to a restrictive interpretation of the collateral order doctrine, see Santtini, 963 F.2d at 592, we conclude that these cases satisfy all three prongs of the Cohen test. With respect to the first prong, the class action plaintiffs and Honeywell, Inc., a third-party defendant in all three cases, argue that the orders do not conclusively determine the disputed question of the Dutch parent corporations' negligence. Honeywell further argues that this appeal will not conclusively determine the issue of the Dutch parent corporations' immunity from suit because, as the Dutch parent corporations concede, the district court failed to rule on the applicability of the FSIA "non-commercial tort" exception.
 
 
 17
 We reject these arguments because they misconceive the disputed legal question being reviewed in this appeal. The district court orders in these three cases conclusively determined that the Dutch parent corporations are subject to suit. In each case, the district court denied the Dutch parent corporations' motions to dismiss or for summary judgment based on its interpretation of the FSIA given the facts before it. Even though the parties were engaging in additional pre-trial discovery, the district court gave no indication that it would reopen the sovereign immunity issue at a later pre-trial stage of the proceedings. Furthermore, in view of its conclusion that the commercial activity exception applied, the district court had no reason to consider the applicability of the "non-commercial tort" exception as it conclusively determined that the Dutch parent corporations were subject to suit without regard for that exception. Accordingly, if we dismissed these appeals the district court would not have occasion to consider the "non-commercial tort" exception on the immunity issue before trial. The fact that the district court did not engage in an independent legal analysis of the sovereign immunity issue in the class action litigation and Holcombe cases, even though its orders in those cases were issued after the Supreme Court decided Saudi Arabia v. Nelson, --- U.S. ----, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993), provides a further indication that the district court considered the matter closed. In short, Honeywell's focus on whether our decision will conclusively determine the immunity question is misdirected because the inquiry regarding a conclusive determination of the disputed question looks to what the district court in fact did, rather than what will be the consequence of the outcome of the appeal.
 
 
 18
 We find the present appellate jurisdiction issue analogous to that which confronted the Supreme Court in Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In Mitchell, the Court held that a district court's denial of a claim of qualified immunity is appealable under the collateral order doctrine to the extent that it turns on issues of law. Id. at 526-30, 105 S.Ct. at 2816-17. In this appeal, the Dutch parent corporations only contest issues of law, which brings these cases within the parameter set forth by the Supreme Court in Mitchell. Even when the parties dispute material facts that may impact on the immunity determination, we have held that we have appellate jurisdiction over the issue of qualified immunity under the collateral order doctrine. Kulwicki, 969 F.2d at 1460 (an overly "narrow reading of Mitchell is not the law of this circuit"); Chinchello v. Fenton, 805 F.2d 126, 130-32 (3d Cir.1986). Hence, we conclude that the district court orders in these three cases conclusively determined that the Dutch parent corporations were amenable to suit. The first prong of the Cohen test is met.
 
 
 19
 Several appellees also contest the second prong of the Cohen test. The class action plaintiffs and Honeywell argue that the district court orders do not resolve an issue completely separate from the merits because determining the Dutch parent corporations' status for purposes of immunity requires factual findings that overlap with liability issues. Thus, they argue the appeals should be dismissed because the cases involve "factual and legal 'considerations enmeshed in the merits of the dispute.' " Santtini, 963 F.2d at 592 (quoting Van Cauwenberghe, 486 U.S. at 528, 108 S.Ct. at 1952). We have not previously addressed this question when reviewing a denial of sovereign immunity under the FSIA. However, the Supreme Court and this court have addressed this issue in the related context of an interlocutory appeal by a government official alleging qualified immunity from suit.
 
 
 20
 In Mitchell, the Supreme Court found that a government official's appeal of a district court's denial of his claim to qualified immunity from suit "easily me[t]" the second prong of the Cohen test. 472 U.S. at 527, 105 S.Ct. at 2816. The Court reasoned that:
 
 
 21
 a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated. An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law[.] ... To be sure, the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief[.] ... [However,] the Court has recognized that a question of immunity is separate from the merits of the underlying action for purposes of the Cohen test even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue.
 
 
 22
 Id. at 527-29, 105 S.Ct. at 2816-17 (citations and footnote omitted).[9] See also Kulwicki, 969 F.2d at 1460-61 ("That further facts may surface to produce a contrary result on motions for summary judgment does not deprive the court's earlier decision of its finality under Cohen."). We adhere to this reasoning in the sovereign immunity context because some overlap of factual determinations between the separate issues of immunity and liability is inevitable and not enough to deprive this court of appellate jurisdiction. See Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen., 923 F.2d 380, 386 (5th Cir.1991).
 
 
 23
 In short, the second prong of the Cohen test is met because these appeals involve the Dutch parent corporations' claims to immunity from suit--an important issue that is separate from the liability issues that compose the merits of the suits. With this holding, we adopt the prevalent view that "sovereign immunity is an immunity from trial and the attendant burdens of litigation" on the merits, "and not just a defense to liability on the merits." Rush-Presbyterian-St. Luke's Medical Ctr. v. Hellenic Republic, 877 F.2d 574, 576 n. 2 (7th Cir.), cert. denied, 493 U.S. 937, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989). Cf. Mitchell, 472 U.S. at 527, 105 S.Ct. at 2816 ("qualified immunity is in part an entitlement not to be forced to litigate"); see also United States v. Moats, 961 F.2d 1198, 1201 (5th Cir.1992) ("the purpose behind collateral order appeals from denials of FSIA immunity is to effectuate the guarantee that immune parties will not become embroiled in litigation").
 
 
 24
 With respect to the third prong of the Cohen test, the class action plaintiffs argue that because three of the Dutch parent corporations' subsidiaries will remain as defendants in the case regardless of the outcome of the sovereign immunity question concerning ABP and USA Holding, the Dutch parent corporations will not face any hardship in being subjected to a trial on the merits. In essence, they contend that ABP and USA Holding can appeal the issue of their liability for a final judgment on sovereign immunity grounds after trial. A district court order is "effectively unreviewable only where [it] involves an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." Lauro Lines S.R.L. v. Chasser, 490 U.S. 495, 498-99, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989) (citations and internal quotations omitted). See also Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A., 947 F.2d 49, 58 (3d Cir.1991).
 
 
 25
 We agree with the Dutch parent corporations that providing review only after trial would destroy the "legal and practical value" of their sovereign immunity defense. At the post-trial stage of the proceeding, the Dutch parent corporations will have been forced to endure the very burden they are arguing they should not be subjected to in the first place--a trial on the merits. See Moats, 961 F.2d at 1203 ("the risk of harm from having to defend the lawsuit remains constant and is an irreparable loss"). Declining to exercise jurisdiction over the purely legal questions concerning the district court's interpretation of the FSIA commercial activity exception would, "in effect, be review denied." Zosky v. Boyer, 856 F.2d 554, 561 (3d Cir.1988), cert. denied, 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989). Because the legal issues raised in these cases are effectively unreviewable on appeal from a final judgment, the third prong of the Cohen test is met.
 
 
 26
 These cases also meet the final requirement of the Cohen test because they involve "serious and unsettled" questions of law. Kulwicki, 969 F.2d at 1459. The district court's opinion in the Federal Insurance litigation case was issued on January 26, 1993, approximately two months before the Supreme Court decided Nelson, --- U.S. ----, 113 S.Ct. 1471, an important case interpreting the language of the FSIA commercial activity exception. Hence, the district court did not have the benefit of the Court's Nelson opinion as binding or persuasive authority when it ruled on the Dutch parent corporations' motion to dismiss on sovereign immunity grounds. As discussed below, the district court relied on the rationale in the Federal Insurance opinion when it later denied ABP's motions in the related cases. Thus, the district court's interpretation of the commercial activity exception is an important and unsettled issue of law pervading these three consolidated cases that must be analyzed in light of Nelson.
 
 
 27
 In holding that these cases involve district court orders that are immediately appealable under the collateral order doctrine, we join every other court of appeals that has decided this question. See Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines, 965 F.2d 1375, 1379 n. 4 (5th Cir.1992); Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 147 (2d Cir.1991), aff'd, --- U.S. ----, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (the Supreme Court did not address the appellate jurisdiction issue); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 443 (D.C.Cir.1990); Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 450-51 (6th Cir.1988); Compania Mexicana de Aviacion, S.A. v. United States Dist. Court for the Cent. Dist. of Cal., 859 F.2d 1354, 1358 (9th Cir.1988); Segni v. Commercial Office of Spain, 816 F.2d 344, 347 (7th Cir.1987). Because we decide that we have appellate jurisdiction over these cases pursuant to the collateral order doctrine, we need not address whether we would have jurisdiction under 28 U.S.C. Sec. 1292.
 
 III. STANDARD OF REVIEW
 
 28
 A determination of the existence of subject matter jurisdiction under the FSIA is a legal question subject to plenary review. Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 706 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); cf. Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1002 (3d Cir.1992) (review of jurisdictional issues is plenary); Kulwicki, 969 F.2d at 1461 (review of the legal issue of qualified immunity is plenary). The cases sub judice arrive at this court after the district court denied the Dutch parent corporations' motions to dismiss or for summary judgment. The district court's decision in the Federal Insurance litigation case involved a statutory interpretation of the FSIA commercial activity exception that is subject to plenary review. See Air Courier Conf. of Am./Int'l Comm. v. United States Postal Serv., 959 F.2d 1213, 1217 n. 3 (3d Cir.1992).
 
 IV. DISCUSSION
 A.
 
 29
 As a preliminary matter, we must address several parties' concerns about the scope of the record that is available to this court when considering these cases on appeal. The three cases consolidated for appeal are related but were not consolidated in the district court for purposes of discovery or trial. The plaintiffs in the class action litigation filed an amicus curiae brief in the Federal Insurance litigation case stating that the more complete factual record of the class action litigation was not available to the Federal Insurance plaintiffs at the time briefing on the motion to dismiss in that case was closed. They request that this court consider the factual record in the Federal Insurance litigation to be incomplete.
 
 
 30
 Furthermore, Honeywell urges this court to consider in this appeal facts developed during the class action discovery which were not presented to the district court during briefing on the motion to dismiss. In the alternative, Honeywell argues that this court must remand the class action case to the district court for it to allow the parties to initiate or expand discovery in order to create a more complete factual record for the district court to rule on the motion to dismiss. Finally, in the Holcombe case Honeywell contends that this court can and should take judicial notice of filings made in other related cases to help resolve that appeal. Before resolving these matters, we will highlight the procedural context in which the motions were considered by the district court.
 
 
 31
 In the Federal Insurance litigation case, ABP and USA Holding filed their motion to dismiss alleging immunity from suit on October 2, 1992. It appears from the record that no discovery had taken place before the motion was filed, nor was discovery commenced between that date and the date of the district court's decision, January 26, 1993. As previously discussed, the district court denied ABP and USA Holding's motion to dismiss. See Federal Ins. Co. v. Richard I. Rubin & Co., No. 92-4177, 1993 WL 21327, at * 1 (E.D.Pa. Jan. 26, 1993).
 
 
 32
 ABP filed its motion to dismiss on immunity grounds in the class action litigation on December 23, 1991. This motion was made concurrently with numerous motions to dismiss filed by the other owner/manager defendants, which are not relevant to this appeal. The class action litigation was assigned for discovery purposes to a magistrate judge, who issued a discovery planning and scheduling order on March 16, 1992. The order indicated that the motions to dismiss would be held until completion of the first two stages of discovery. Upon completion, the district court granted in part, and denied in part, the numerous motions to dismiss. See In re One Meridian Plaza Fire Litig., 820 F.Supp. 1460, 1464-65 (E.D.Pa.1993). The district court denied ABP's motion to dismiss on immunity grounds, incorporating by reference its earlier opinion in the Federal Insurance litigation case. Id. at 1491. In this opinion, the district court made no factual findings other than to set out the facts as stated in the class action complaint. See id. at 1465-69 & n. 3. Thus, we will assume that the district court did not consider the discovery undertaken in the class action litigation when ruling on ABP's motion to dismiss.
 
 
 33
 The Holcombe case arrives at this court with a distinct procedural history. After removing this case from state court, ABP filed its answer to the complaint on November 15, 1991, in which it alleged immunity from suit pursuant to the FSIA. In response to discovery requests, ABP filed motions for summary judgment and for a protective order on July 14, 1992. ABP submitted affidavits in support of its motions. The parties stipulated that they would not engage in discovery on the merits while the motion for summary judgment was pending, and that the Holcombe plaintiff could seek discovery on the immunity issue before briefing closed. The Holcombe plaintiff filed a response to the summary judgment motion relying on the district court's opinion in the related Federal Insurance litigation case, as well as discovery taken in other related actions. As previously discussed, on May 24, 1993 the district court denied ABP's motion for summary judgment in a one-page order without opinion.[10]
 
 
 34
 We draw several conclusions from the district court's disposition of these cases. First, although it did not expressly acknowledge so in the Holcombe case, the district court relied on its opinion in the Federal Insurance litigation case in denying the motion to dismiss in the class action litigation case and the motion for summary judgment in the Holcombe case. Second, the only factual findings made by the district court in denying all three motions were those set out in the Federal Insurance litigation opinion. Thus, we base our review on those limited factual findings made by the district court in the Federal Insurance litigation opinion. With these conclusions in mind, we turn to the arguments made concerning the scope of the records on appeal.
 
 
 35
 It is a well settled principle of law in this circuit that the court of appeals normally is limited in its review only to those facts developed in the district court. Clark v. K-Mart Corp., 979 F.2d 965, 967 (3d Cir.1992) (in banc); Bass v. Attardi, 868 F.2d 45, 51 (3d Cir.1989) (per curiam); United States ex rel. Bradshaw v. Alldredge, 432 F.2d 1248, 1250 (3d Cir.1970). As we said in a previous case, "[t]he only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court." Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1165 (3d Cir.1986), cert. denied, 481 U.S. 1070, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987). While this principle is not without exception, see Clark, 979 F.2d at 967 (expanding the record to determine whether subsequent events mooted the appeal), we see no reason to create an exception in this appeal. Although we will adhere to the rule that we can only consider record facts as they were developed in the district court in each case, we recognize that we have the power to take judicial notice of subsequent developments in related proceedings since the appeal in each case was filed. See Landy v. Federal Deposit Ins. Corp., 486 F.2d 139, 150-51 (3d Cir.1973), cert. denied, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).
 
 
 36
 Turning to the matters raised in this appeal, we will decide the Federal Insurance litigation case only on facts contained in that record. Since we will reverse the district court's order in that case solely on its interpretation of law, on remand it is for the district court to determine whether the factual record is sufficient for it to rule on other jurisdictional theories.[11] We decline Honeywell's invitation to consider evidence that was discovered in the class action litigation but that was not relied upon by the district court in denying ABP's motion to dismiss in that case. Again, it is a matter for the district court on remand to decide what evidence it should consider with respect to the motions to dismiss. Finally, with respect to the Holcombe case, we agree with Honeywell that we have the power to take judicial notice of subsequent developments in related cases. However, since we will reverse the district court only on its interpretation of law as articulated in the Federal Insurance litigation opinion, taking judicial notice of related facts and developments would not assist our limited review.
 
 B.
 
 37
 This appeal presents several issues with respect to the applicability of the commercial activity exception to the Foreign Sovereign Immunities Act. In all three cases that are the subject of this appeal, the district court ruled that it had jurisdiction over the Dutch parent corporations by virtue of their commercial activity. However, the district court only articulated its reasoning in the Federal Insurance litigation case. See Federal Ins. Co., No. 92-4177, 1993 WL 21327. Therefore, we will only address the district court's interpretation of the FSIA commercial activity exception as set forth in that opinion.
 
 
 38
 In the Federal Insurance litigation case, the Dutch parent corporations raised the issue of immunity from suit in their motion to dismiss. Initially, the district court had to determine whether ABP and USA Holding were "foreign states" entitled to immunity under the FSIA. See id. at * 2-3; 28 U.S.C. Sec. 1603(a). The district court found that both ABP and USA Holding are foreign states within the meaning of the FSIA,[12] and, therefore, are entitled to a presumption of immunity. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 3. Although the burden then shifted to the plaintiffs to establish that one of the exceptions to immunity applied, id., we agree with the district court that the ultimate burden of proving immunity from suit lies with the Dutch parent corporations. See H.R.Rep. No. 1487, 94th Cong., 2d Sess. 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6616;[13] Gerding v. Republic of France, 943 F.2d 521, 525-26 (4th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 1812, 123 L.Ed.2d 443 (1993); Forsythe v. Saudi Arabian Airlines Corp., 885 F.2d 285, 289 n. 6 (5th Cir.1989) (per curiam). The Dutch parent corporations need not, however, plead and prove that each FSIA exception does not apply. Gerding, 943 F.2d at 526; Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo Gen., 923 F.2d 380, 390 n. 14 (5th Cir.1991).
 
 
 39
 The Federal Insurance plaintiffs alleged that the district court had subject matter jurisdiction with respect to the Dutch parent corporations under the commercial activity exception. See 28 U.S.C. Sec. 1605(a)(2). This provision states that:
 
 
 40
 A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
 
 
 41
 Id. Our discussion of the applicability of this exception in the Federal Insurance litigation case will follow the analysis employed by the district court.
 
 1. Commercial Activity of USA Holding
 
 42
 In analyzing the commercial activity exception with respect to USA Holding, the district court first found that USA Holding engaged in commercial activity as defined in the FSIA by virtue of its ownership interest in USA One B.V. and USA Two B.V., which were incorporated in the Netherlands to invest in U.S. real estate. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 5. Second, the district court concluded that this commercial activity was sufficient to constitute "commercial activity carried on in the United States," 28 U.S.C. Sec. 1605(a)(2), within the meaning of the first clause of the FSIA commercial activity exception. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 5. As noted by the district court, see id., and discussed by the Supreme Court in Nelson, see --- U.S. at ----, 113 S.Ct. at 1477, such commercial activity is defined by the statute as "commercial activity carried on by [the foreign] state and having substantial contact with the United States." 28 U.S.C. Sec. 1603(e).
 
 
 43
 The district court found that USA Holding engaged in commercial activity by forming two wholly owned subsidiaries--USA One B.V. and USA Two B.V. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 5. The district court then concluded that this ownership interest resulted in transactions having a substantial connection with the United States through the further formation of the subsidiary partnership USA One Associates, which was established in Pennsylvania to purchase and own U.S. real estate. Id. In essence, the district court held that USA Holding had waived its entitlement to sovereign immunity under the FSIA by virtue of its status as a parent to USA One B.V. and USA Two B.V., which in turn formed USA One Associates to acquire a significant ownership interest in the partnership that owns One Meridian Plaza, a United States real estate venture. Id.
 
 
 44
 The district court erred by interpreting the first clause of the commercial activity exception in an overbroad manner so as to allow for subject matter jurisdiction based on any commercial activities undertaken by the Dutch parent corporations with a connection to the United States. We adopt a two-part test when determining whether a foreign state's commercial activities are sufficient to deprive it of sovereign immunity under the FSIA commercial activity exception. Under this test, the initial inquiry is whether there is a sufficient jurisdictional connection or nexus between the commercial activity and the United States. The second inquiry is whether there exists a substantive connection or nexus between the commercial activity and the subject matter of the cause of action.
 
 
 45
 In order for the district court to have jurisdiction under the first clause of the commercial activity exception, the foreign state (USA Holding) must have carried on commercial activity directly in the United States, or it must have carried on commercial activity with a substantial connection to the United States. As a factual finding, the district court concluded only that the commercial activity undertaken by USA Holding was the formation of two wholly owned Dutch subsidiaries (USA One B.V. and USA Two B.V.), id., which certainly was not activity undertaken directly in the United States. Nevertheless, the district court attributed the commercial activities undertaken by USA One B.V., USA Two B.V., and USA One Associates in the United States, with respect to managing and operating One Meridian Plaza, to their parent corporation USA Holding, thereby finding that USA Holding engaged in commercial activity with a substantial connection to the United States. Such an inference by the district court violates the important principle that the acts of separate corporations established by foreign governments should not be attributed to related foreign entities unless doing so would "work fraud or injustice." First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 624-29, 103 S.Ct. 2591, 2598-601, 77 L.Ed.2d 46 (1983) ("Bancec ").
 
 
 46
 In Bancec, the Supreme Court held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." Id. at 626-27, 103 S.Ct. at 2600. Although this principle initially was articulated in a case involving a determination of substantive liability, not a specific application of the FSIA commercial activity exception, courts of appeals consistently have relied on this presumption when making an FSIA jurisdictional determination through the application of 28 U.S.C. Sec. 1605(a)(2). E.g., Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines, 965 F.2d 1375, 1382 (5th Cir.1992) ("The broader principles upon which Bancec was based ... are undoubtedly relevant whenever a plaintiff seeks to disregard a foreign government instrumentality...."); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 533 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992); Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 446-47 (D.C.Cir.1990); Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 564-65 (11th Cir.1987). As noted by the Foremost-McKesson court, the Restatement directs that " '[w]hen a state instrumentality is not immune ..., for instance because the claim arises out of a commercial activity, the claim is ordinarily to be brought only against the instrumentality.' " 905 F.2d at 446 (quoting 1 Restatement (Third) of the Foreign Relations Law of the United States Sec. 452 cmt. c (1987) (emphasis added in Foremost-McKesson )).
 
 
 47
 In the present case, the instrumentalities that engaged in commercial activities in the United States were USA One B.V., USA Two B.V., and USA One Associates, not USA Holding. The district court erred by ignoring the separate juridical status of the various entities and finding USA Holding responsible for the activities engaged in by its related subsidiaries. We recognize that there are two major exceptions to the Bancec rule, namely, the independent corporate status of government-owned entities should be disregarded (1) "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created;" or (2) where to give effect to the separate instrumentalities " 'would work fraud or injustice.' " 462 U.S. at 629, 103 S.Ct. at 2601 (quoting Taylor v. Standard Gas & Elec. Co., 306 U.S. 307, 322, 59 S.Ct. 543, 550, 83 L.Ed. 669 (1939)). See also Hercaire, 821 F.2d at 565; de Letelier v. Republic of Chile, 748 F.2d 790, 794 (2d Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). However, the district court never articulated factual findings or a legal justification sufficient for this court to uphold disregarding the independent juridical status of USA One B.V., USA Two B.V., and USA One Associates. Thus, the district court erred when it attributed the commercial activities of USA One Associates, the Pennsylvania partnership, and USA One B.V. and USA Two B.V., the Netherlands corporations, undertaken in the United States, to their parent USA Holding.
 
 
 48
 In short, the single act of creating two Dutch corporations, which later formed a U.S. partnership to acquire a significant ownership interest in One Meridian Plaza, was insufficient commercial activity for the district court to conclude it had subject matter jurisdiction over USA Holding.[14] We hold that a district court cannot exercise jurisdiction over a foreign state under the first clause of the FSIA commercial activity exception unless it finds a sufficient jurisdictional connection or nexus between the commercial activity engaged in by that particular foreign entity and the United States.
 
 
 49
 We also hold that the district court erred in not undertaking an analysis to determine whether a substantive connection or nexus exists between the commercial activity that USA Holding engaged in and the cause of action alleged. Such an undertaking is made necessary by the language of the statute, which allows for an exception to sovereign immunity only when "the action is based upon a commercial activity carried on in the United States." 28 U.S.C. Sec. 1605(a)(2) (emphasis added). Although we have had few occasions to interpret the language of the FSIA commercial activity exception, we have held that the claims alleged in the complaint must be "based upon" commercial activities undertaken by the foreign state as contained in the record. See Sugarman v. Aeromexico, Inc., 626 F.2d 270, 272 (3d Cir.1980). We reiterate that holding today and announce that the district court must undertake an analysis and determine that the cause of action has a substantive connection to the commercial activities engaged in by the foreign state before it exercises jurisdiction under the commercial activity exception to the FSIA.
 
 
 50
 In adhering to this interpretation of the statute, we follow several other courts of appeals which require the actual legal claims being pursued to have arisen materially from the commercial activity undertaken by the foreign state. E.g., Stena Rederi, 923 F.2d at 387 ("In order to satisfy the commercial activities exception to sovereign immunity, the commercial activity that provides the jurisdictional nexus with the United States must also be the activity on which the lawsuit is based."); Compania Mexicana de Aviacion, S.A. v. United States Dist. Court for the Cent. Dist. of Cal., 859 F.2d 1354, 1360 (9th Cir.1988); Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 452 (6th Cir.1988); Barkanic v. General Admin. of Civil Aviation of the Peoples Republic of China, 822 F.2d 11, 13 (2d Cir.), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987); Gilson v. Republic of Ireland, 682 F.2d 1022, 1027 n. 22 (D.C.Cir.1982) ("Section 1605's 'based upon' standard is satisfied if plaintiff can show a direct causal connection between [the foreign entity's commercial activity in the United States] and the [acts] giving rise to his claims...."). Several district courts in this circuit also have adopted this interpretation of the statutory language. See Tote v. Iberia Int'l Airlines, 649 F.Supp. 41, 42-43 (E.D.Pa.1986); National Expositions, Inc. v. DuBois, 605 F.Supp. 1206, 1209 & n. 7 (W.D.Pa.1985).
 
 
 51
 The Supreme Court recently agreed with this interpretation of the "based upon" language of the commercial activity exception in Saudi Arabia v. Nelson, --- U.S. ----, 113 S.Ct. 1471 (1993). In Nelson, a U.S. citizen sued the Kingdom of Saudi Arabia and its state-run hospital for tortious injuries resulting from his employment at the hospital. Id. at ---- - ----, 113 S.Ct. at 1474-76. Nelson was recruited and offered employment through an independent corporation doing business in the United States on behalf of Saudi Arabia. Id. While the district court dismissed the complaint for lack of subject matter jurisdiction under the FSIA, the U.S. Court of Appeals for the Eleventh Circuit reversed, finding that Nelson's recruitment and hiring were commercial activities undertaken by Saudi Arabia. Id. at ----, 113 S.Ct. at 1476. The appellate court also concluded that Nelson's tort claims were "based upon" these activities within the meaning of the FSIA commercial activity exception.
 
 
 52
 The Supreme Court reversed, finding that Nelson's cause of action was not "based upon a commercial activity" within the meaning the statute. Id. at ----, 113 S.Ct. at 1481. The Court interpreted the term "based upon" to require the plaintiff's lawsuit to involve a claim that materially results from conduct that constitutes the defendant's commercial activity in the United States. Id. at ----, 113 S.Ct. at 1477. While the Court conceded that the recruitment and hiring "activities led to the conduct that eventually injured [Nelson], they are not the basis for [the] suit." Id. at ----, 113 S.Ct. at 1478. In order to be a basis for the suit, the activities must involve "elements of a claim that, if proven, would entitle the plaintiff to relief under his theory of the case." Id. at ----, 113 S.Ct. at 1477. Nelson's suit involved claims of tortious conduct, not a breach of the contract the parties entered into as a result of Saudi Arabia's commercial activities of recruiting and hiring in the United States. Id. at ----, 113 S.Ct. at 1478. The Supreme Court also concluded that "tortious conduct itself fails to qualify as 'commercial activity' within the meaning of the Act." Id.
 
 
 53
 The Nelson case is instructive because it makes clear that the commercial activity undertaken by the defendant must be directly connected to the cause of action alleged by the plaintiff. In short, the cause of action must arise directly from the defendant's commercial activities in the United States in order for the first clause of the commercial activity exception to apply. Turning to the facts before us, many claims are alleged against the owner/manager defendants in these consolidated cases. These claims are primarily tort claims--allegations phrased in terms of negligence, gross negligence, recklessness, nuisance, and strict liability that the defendants breached various duties and standards of care with respect to maintaining electrical and fire detection systems, inspecting the building, and failing to warn plaintiffs, among many others. These claims are not "based upon" USA Holding's sole commercial activity of forming two Dutch subsidiary corporations that eventually invested in One Meridian Plaza through a U.S. subsidiary.[15] The plaintiffs would not need to prove that USA Holding formed two wholly-owned Dutch subsidiaries to invest in U.S. real estate in order to prevail on their tort claims. Thus, the plaintiffs' claims are not "based upon" USA Holdings' commercial activity--such activity is irrelevant to the tort claims because it does not form any "basis" or "foundation" of the claims. See id. at ----, 113 S.Ct. at 1477 (quoting Black's Law Dictionary 151 (6th ed. 1990)).
 
 
 54
 The various plaintiffs argue that the district court's decision should be affirmed by attempting to cast the determination as one that can be disturbed only if it was clearly erroneous. In support of this position, the plaintiffs argue that the district court's conclusions that the Dutch defendants engaged in commercial activity that had a substantial connection with the United States were factual findings amply supported by the record. This argument misconceives the underlying issue, i.e., whether the district court used the correct legal standard when determining if the commercial activity exception applies. The district court committed an error of law, over which we have plenary review, when determining that the commercial activity exception did apply.
 
 
 55
 In addition, the various plaintiffs argue that the Nelson case is distinguishable because the claim involved tortious conduct undertaken by the sovereignty itself, rather than a claim resulting from its corporate governmental instrumentality engaging in investment activities. They argue that Nelson is relevant only to the extent it defines and discusses "commercial activity" for purposes of the commercial activity exception. This argument fails because Nelson explicitly involved an interpretation of the "based upon" language as used by Congress in the statute. Id. at ---- - ----, 113 S.Ct. at 1477-78. This section of the opinion is central to the Court's holding and provides a directive concerning the statute that we are compelled to follow.
 
 2. Commercial Activity of ABP
 
 56
 With respect to ABP, the district court found that it had jurisdiction over this defendant under two distinct theories. First, the district court found that it had subject matter jurisdiction under the third clause of the commercial activity exception because ABP engaged in commercial acts outside the U.S. that had a direct effect inside the U.S. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 5-6 (citing 28 U.S.C. Sec. 1605(a)(2); Republic of Argentina v. Weltover, Inc., --- U.S. ----, ----, 112 S.Ct. 2160, 2168, 119 L.Ed.2d 394 (1992)). The second and alternative theory relied upon by the district court is that "piercing the corporate veil" from USA Holding to ABP reveals that the two should be considered one corporate entity for purposes of FSIA analysis. Id. at * 6 (citing Bancec ). The district court erred with respect to both theories.
 
 
 57
 We must reject the district court's second theory of jurisdiction over ABP because we have already determined that on this record the court erred as a matter of law in concluding that USA Holding relinquished its sovereign immunity. Thus, even if the district court's conclusion that it would further a fraud or be unjust to adhere to the presumption of the Dutch corporations' independent juridical status was correct,[16] piercing the corporate veil from USA Holding to ABP would not provide a sufficient basis for jurisdiction over ABP.
 
 
 58
 With respect to the district court's first theory, it has no subject matter jurisdiction over ABP under the third clause of the commercial activity exception because the claims alleged were not "based upon" acts performed "in connection with" ABP's commercial activity. See Nelson, --- U.S. at ----, 113 S.Ct. at 1478. The district court found that ABP engaged in the following commercial activities: (1) it provided an unsecured loan to USA One Associates for the purpose of financing the acquisition of a sixty-five percent interest in the partnership that owns One Meridian Plaza; and (2) the loan terms were negotiated and executed in the Netherlands, with payments to be made to ABP by its subsidiary in the Netherlands in U.S. dollars. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 1, * 6. While negotiating and executing a loan is a contractual transaction that is commercial activity for purposes of the FSIA, see Stena Rederi, 923 F.2d at 387 n. 9, again, as with USA Holding, the legal claims did not arise from these commercial activities.
 
 
 59
 The various plaintiffs allege several tort-based theories of recovery stemming primarily from the design and construction of the building, as well as from the improper maintenance and operation of the building. The theory underlying all these claims is that One Meridian Plaza was managed in such a fashion as to ignore local, state, and national fire codes, which resulted in a fire causing numerous injuries to the various plaintiffs. The district court erred because these claims did not arise from the loan transaction that it found to be ABP's only commercial activity under the FSIA.
 
 
 60
 In Nelson, the Supreme Court noted that Congress made an important distinction between the first clause of the FSIA commercial activity exception and the second and third clauses. The Court theorized that there might be an important "difference between a suit 'based upon' commercial activity and one 'based upon' acts performed 'in connection with' such activity." --- U.S. at ----, 113 S.Ct. at 1478. The second and third clauses of the FSIA commercial activity exception use the "in connection with" language, which arguably might allow for a more tenuous causal link between the claims alleged and the commercial activities. The Court did not describe the extent of a substantive connection required under the second and third clauses of the commercial activity exception in Nelson because the case raised an issue only under the first clause of the exception.
 
 
 61
 The present case raises an issue as to the required substantive nexus under the third clause of the FSIA commercial activity exception because the district court expressly relied on this clause for jurisdiction over ABP. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 5-6. The district court concluded that it had jurisdiction over ABP as a financier "because USA One Associates' acquisition of a majority interest in the Meridian building followed as an 'immediate consequence' of this loan transaction." Id. at * 6. The plaintiffs argue that the district court's interpretation was correct because the loan from ABP funded the acquisition of One Meridian Plaza; thus, the purchase followed "as an immediate consequence" of ABP's commercial activity. See Weltover, --- U.S. at ----, 112 S.Ct. at 2168.
 
 
 62
 In Weltover, the Supreme Court indicated that the foreign sovereign's commercial activity must have a "direct effect" in the United States in order for a court to have jurisdiction under the third clause of the FSIA commercial activity exception. Id. However, in that case it was uncontested that the cause of action was "based upon" a commercial activity undertaken outside the U.S. Id. at ----, 112 S.Ct. at 2165. The claims in Weltover involved allegations of breach of contract due to the rescheduling of the maturity dates on government bonds, which was the commercial activity undertaken by Argentina, the foreign state, for jurisdictional purposes. Id. at ---- - ----, 112 S.Ct. at 2164-65. Hence, the substantive connection between the commercial activity and the claims alleged was not in issue.
 
 
 63
 Weltover does not stand for the proposition that jurisdiction lies under the third clause of the FSIA commercial activity exception if the foreign state undertakes commercial activity outside the U.S. that has a direct effect inside the U.S. when the cause of action is not causally linked to the commercial activity. In the present case, ABP did undertake commercial activity in the Netherlands by means of providing a loan to USA One Associates and collecting payments on that loan. That activity did have a direct effect in the United States because the loan provided capital for USA One Associates to acquire a majority interest in One Meridian Plaza.
 
 
 64
 Nevertheless, the causes of action alleged in the lawsuit are not substantively connected to the loan transaction. As previously discussed, the claims are primarily tort-based and do not include a breach of contract allegation stemming from the loan transaction. There is no substantive nexus that satisfies the "based upon" requirement contained in the statutory language. Therefore, Weltover does not provide persuasive authority for the plaintiffs' argument that subject matter jurisdiction lies under the third clause of the FSIA commercial activity exception. In sum, the district court erred in concluding that it had subject matter jurisdiction over ABP under the third clause of the commercial activity exception because the claims alleged in the lawsuit were not "based upon" ABP's commercial loan transaction with its subsidiary USA One Associates.
 
 V. CONCLUSION
 
 65
 We will reverse the orders of the district court in all cases consolidated for appeal. The district court erred in its interpretation of the FSIA commercial activity exception in the Federal Insurance litigation opinion because the claims alleged did not arise from the commercial activities undertaken by the Dutch parent corporations as found by the court. With respect to USA Holding, the district court also erred in concluding that this entity engaged in commercial activity in the United States sufficient for jurisdiction. We will reverse the orders of the district court in the class action litigation and the Holcombe cases because the court relied on the reasoning contained in the Federal Insurance litigation opinion when denying ABP's motions. We will remand these cases to the district court for further proceedings consistent with this opinion. To the extent that the plaintiffs raised the "non-commercial tort" exception in response to the motions to dismiss and for summary judgment, they may again assert that exception on remand.
 
 
 66
 Costs will be taxed in all of these consolidated cases against the appellees.
 
 
 
 *
 (Amended as per the Clerk's Order dated 6/17/93)
 
 
 [1]
 Two defendants are at issue in this case: Algemeen Burgerlijk Pensioenfonds ("ABP") and USA Holding B.V. ("USA Holding"). In this opinion, these two corporations will be referred to jointly as the "Dutch parent corporations." USA Holding has appealed the denial of a motion to dismiss in Docket No. 93-1157 only. ABP has appealed the denial of its motion to dismiss or its motion for summary judgment in all cases consolidated for purposes of this appeal
 
 
 [2]
 In this opinion, we address only whether the district court was correct as a matter of law in its decision to exercise jurisdiction over ABP and USA Holding under the FSIA commercial activity exception. We decline the parties' invitation to address whether the district court could exercise jurisdiction under the FSIA non-commercial tort exception because the district court failed to rule on the applicability of this exception in the first instance
 
 
 [3]
 This case encompasses our Docket Nos. 93-1474, 93-1475, 93-1476, 93-1477, 93-1478, 93-1479, 93-1480 and 93-1481
 
 
 [4]
 The nontenants consist of various parties who were not tenants of One Meridian Plaza at the time of the fire but who allege they suffered uninsured losses as a result of the fire. In re One Meridian Plaza Fire Litig., 820 F.Supp. 1460, 1464 (E.D.Pa.1993). These cases were originally filed in a Pennsylvania state court, but were removed to the United States District Court for the Eastern District of Pennsylvania by defendant ABP. The district court consolidated all of these complaints into a class action complaint and considered and ruled on motions to dismiss and motions for a more definite statement filed by each defendant. Id. By order dated July 15, 1993, the district court denied the class plaintiffs' motion for class certification. In re One Meridian Plaza Fire Litig., 26 Fed.R.Serv.3d (Callaghan) 974, 975, 1993 WL 273691 (E.D.Pa.1993)
 
 
 [5]
 This case was also originally filed in a Pennsylvania state court and removed to the United States District Court for the Eastern District of Pennsylvania by defendant ABP
 
 
 [6]
 As our disposition of these cases turns on the district court's interpretation of the FSIA in the Federal Insurance litigation case, we will summarize only the factual findings made by the district court in that opinion. See Federal Ins. Co. v. Richard I. Rubin & Co., No. 92-4177, 1993 WL 21327, at * 1 (E.D.Pa. Jan. 26, 1993)
 
 
 [7]
 USA One B.V. and USA Two B.V. do not dispute subject matter and personal jurisdiction in these cases because they acknowledge that the commercial activity exception contained in the FSIA applies to them
 
 
 [8]
 Noting that the Dutch parent corporations premised their motion to dismiss for lack of personal jurisdiction entirely on their argument that none of the FSIA immunity exceptions applied, which is an attack on the subject matter jurisdiction of the court, the district court denied the motion to dismiss upon ruling that it had subject matter jurisdiction over ABP and USA Holding pursuant to the FSIA commercial activity exception. Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 7. In this appeal, the Dutch parent corporations renew their argument that the district court lacked personal jurisdiction over them, but again provide no independent basis for this theory. Cf. Velidor v. L/P/G Benghazi, 653 F.2d 812, 816 (3d Cir.1981), cert. dismissed, 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982) (defendants argued that the court lacked in personam jurisdiction based on the FSIA admiralty provision and improper service of process). We agree with the district court that in this case the motion to dismiss for lack of personal jurisdiction is subsumed by the Dutch parent corporations' motion to dismiss for lack of subject matter jurisdiction. Therefore, we will not discuss personal jurisdiction separately from subject matter jurisdiction
 
 
 [9]
 Last term, the Supreme Court extended the Mitchell rationale to hold that district court orders denying Eleventh Amendment immunity claims by states or "arms of the state" are immediately appealable under the collateral order doctrine. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., --- U.S. ----, ----, 113 S.Ct. 684, 687-89, 121 L.Ed.2d 605 (1993)
 
 
 [10]
 In this sovereign immunity context, we find little procedural difference between the motions to dismiss in the Federal Insurance litigation and class action litigation cases and the motion for summary judgment in the Holcombe case. Cf. Ashe v. Corley, 992 F.2d 540, 544 (5th Cir.1993) (a motion for summary judgment based solely on the pleadings should be evaluated on the same standards as a motion to dismiss for failure to state a claim); Carver v. Bunch, 946 F.2d 451, 455 (6th Cir.1991) ("the court's inquiry under either 12(b)(6) or 56(c) is identical, with the most significant difference being the type of evidence the court considers in reaching its decision"). The district court may, and in these cases did, consider factual evidence and briefs in support of or against either motion
 
 
 [11]
 We agree with other courts of appeals that sovereign immunity is a "critical preliminary determination" of subject matter jurisdiction for which the parties should be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration of the issue. E.g., Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 449 (D.C.Cir.1990); Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir.1988). However, we caution that "discovery and fact-finding should be limited to the essentials necessary to determining the preliminary question of jurisdiction." Gould, 853 F.2d at 451
 
 
 [12]
 As noted previously, none of the various parties dispute this determination on appeal. Judge Greenberg points out that while none of the parties contended in the district court and none have contended on this appeal that USA Holding is not a foreign state this assumption might not be correct. If USA Holding is a foreign state it can only be by reason of its ownership by ABP which is an agency or instrumentality of the Dutch government. But Judge Greenberg believes that a reasonable inference might be drawn that the term "foreign state" in 28 U.S.C. Sec. 1603(b)(2) does not include an entity which is a foreign state only because it is an agency or instrumentality of a foreign state. He reasons that if "foreign state" in section 1603(b)(2) includes an "agency or instrumentality" of a foreign state then it must also include a "political subdivision" of a foreign state yet section 1603(b)(2) expressly provides that an "agency or instrumentality" may be an "organ of" or be owned by a "political subdivision" of a foreign state. In this regard he points out that section 1603(a) expressly provides that "foreign state" includes both political subdivisions and agencies or instrumentalities. Thus, a reasonable inference can be drawn that the term "political subdivision" must have been used in section 1603(b)(2) because "foreign state" in that section did not include a "political subdivision thereof." Otherwise the term "political subdivision" in section 1603(b)(2) is superfluous. Furthermore, it can be argued reasonably that Congress by the inclusion of "political subdivision" and the omission of "agency or instrumentality" in section 1603(b)(2) intended to distinguish between these types of entities, the inference being that the former but not the latter could own an entity which could be regarded as an agency or instrumentality of a foreign state. Judge Greenberg nevertheless joins in this opinion without reservation because this issue has not been preserved in this litigation
 
 
 [13]
 This House report reflects Congress' intent to create a burden-shifting process when foreign states plead a defense of immunity under the FSIA
 [The FSIA] starts from a premise of immunity and then creates exceptions to the general principle.... Once the foreign state has produced [ ] prima facie evidence of immunity, the burden of going forward [ ] shift[s] to the plaintiff to produce evidence establishing that the foreign state is not entitled to immunity. The ultimate burden of proving immunity [ ] rest[s] with the foreign state.
 H.R.Rep. No. 1487, 94th Cong., 2d Sess. 17 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6616.
 
 
 [14]
 The parties do not dispute that USA One Associates, a Pennsylvania partnership that owns 65% of One Meridian Plaza by virtue of its ownership interest in E/R Associates, engaged in commercial activity in the United States sufficient for jurisdiction. Likewise, the parties do not dispute that USA One B.V. and USA Two B.V. relinquished their right to sovereign immunity by engaging in commercial activities in the U.S
 
 
 [15]
 In one count, the Federal Insurance plaintiffs did allege a breach of contract by the owner/manager defendants. However, this claim does not concern the formation of the Dutch subsidiaries--it involves a lease entered into between the defendants and plaintiffs' subrogors which required the owner/manager defendants to assure that the building remained in compliance with national, state, and local fire safety codes
 
 
 [16]
 We need not, and do not, express any opinion as to whether the district court was correct in concluding that it would work a fraud or be unjust to adhere to the corporate separateness of ABP and USA Holding on this record. However, we feel compelled to clarify a point of law relied on by the district court in its analysis. The district court cited Bancec, 462 U.S. at 629, 103 S.Ct. at 2601, just prior to stating that ABP should not be allowed to utilize the FSIA "to circumvent its obligations for violations of the United States laws, while nevertheless reaping the benefits of investing in United States property." Federal Ins. Co., No. 92-4177, 1993 WL 21327, at * 7. In Bancec, the Supreme Court held that the presumption of separateness could be ignored to avoid the injustice of "permitting a foreign state to reap the benefits of our courts while avoiding the obligations of international law." 462 U.S. at 633-34, 103 S.Ct. at 2603. While the Court declined to announce a rigid test for determining when it is appropriate to ignore the separate juridical status of foreign entities, id. at 633, 103 S.Ct. at 2603, we do not believe the district court's articulation of its rationale to be wholly consistent with Bancec
 At the core of the Court's concern in Bancec was Cuba's ability to obtain relief in a U.S. court in a related proceeding, while simultaneously avoiding liability on a counterclaim through the creation of a separate juridical entity that could not satisfy any judgment. Id. at 630-34, 103 S.Ct. at 2602-03. Unlike Cuba in the Bancec case, the Netherlands is not engaged in any related litigation in the United States as a plaintiff. The Dutch parent corporations are not using our courts to pursue any legal remedy stemming from the fire. However, the district court inherently found the benefits received by ABP from its subsidiaries' real estate investments to be similar to the benefits a foreign state would receive from bringing a suit in the United States. Making a loan to a subsidiary which uses the funds to invest in income-producing real estate to repay the principal and interest is a commercial transaction that is completely different from filing suit in the U.S. to seek a remedy. The district court's reasoning seems to be an extension of the Bancec rationale that is not principled and, as far as we have found, is without support in the case law.