NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No.  09-1297 & 09-1298

———————

THE ABI JAOUDI AND AZAR TRADING CORPORATION

v.

CIGNA WORLDWIDE INSURANCE COMPANY;
SAMUEL M. LOHMAN, ESQ.

THE HONORABLE JOSIE SENESIE, COMMISSIONER OF
INSURANCE FOR THE REPUBLIC OF LIBERIA AND COURT
APPOINTED RECEIVER FOR THE LIBERIAN BRANCH OF
CIGNA WORLDWIDE INSURANCE COMPANY,
                    Appellant (09-1297)
          (Pursuant to Rule 12(a), FRAP)

                    Samuel M. Lohman, Esq.
                         Appellant (09-1298)

———————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-91-cv-06785)
District Judge: Honorable John P. Fullam

———————

Argued March 9, 2010

———————

Before: AMBRO, SMITH and MICHEL,[*] Circuit Judges

(Opinion filed: August 20, 2010)

———————

[*] Honorable Paul R. Michel, Chief Judge, United States Court of Appeals for the
Federal Circuit, sitting by designation.  Chief Judge Michel has since retired, and this
opinion has been approved by a quorum of the panel.  See 28 U.S.C. § 46(d).

Henry F. Reichner, Esquire
Reed Smith LLP
1650 Market Street
2500 One Liberty Place
Philadelphia, PA   19103-7301

Paul E. Breene, Esquire
Reed Smith LLP
599 Lexington Avenue
New York, NY   10022

James C. Martin, Esquire (Argued)
Reed Smith LLP
225 Fifth Avenue
Pittsburgh, PA   15222

  Counsel for Appellant
  Josie Senesie

Michael Conley, Esquire
Anderson, Kill & Olick
1600 Market Street
Suite 2500
Philadelphia, PA   19103-0000

Mark Gottlieb, Esquire (Argued)
William H. Pillsbury, Esquire
Offit Kurman
1601 Cherry Street
Three Parkway, Suite 1300
Philadelphia, PA   19102

  Counsel for Appellant/Cross Appellee
  Samuel M Lohman, Esq.

Richard J. Bortnick, Esquire
Cozen & O'Connor
200 Four Falls Corporate Center
P.O. Box 800, Suite 400
West Conshohocken, PA 19428-0800

Stephen A. Cozen, Esquire
Cozen & O'Connor
1900 Market Street, 3rd Floor
Philadelphia, PA 19103-0000

Donald F. Donovan, Esquire (Argued)
Robert D. Goodman, Equire
Matthew S. Hackell, Esquire
Donald W. Hawthorne, Esquire
William H. Taft, V, Esquire
Debevoise & Plimpton
919 Third Avenue, 41st Floor
New York, NY 10022-0000

Louis B. Kimmelman, Esquire
O'Melveny & Myers
153 East 53rd Street
New York, NY 10022

Joshua E. Kurland, Esquire
United States Department of Justice
Civil Division, Commercial Litigation
1100 L Street, N.W.
Washington, DC 20530-0000

       Counsel for Appellee
       CIGNA Worldwide Insurance

———————

OPINION OF THE COURT

———————

AMBRO, <u>Circuit Judge</u>

This case involves the scope of foreign official immunity in the contempt context. Although the arguments advanced in the District Court, as well as those raised before us, focused on the applicability of the Foreign Sovereign Immunities Act ("FSIA"), 28

3

U.S.C. §§ 1330, 1602 *et seq.*, that issue has since been settled by the Supreme Court in *Samantar v. Yousuf*, --- U.S. ---, 130 S. Ct. 2278 (2010). There, the Court held that the FSIA does not apply to individual foreign officials, such as Josie Senesie. Samuel Lohman, Senesie's counsel in various actions relevant to this appeal, likewise cannot invoke the FSIA because his only basis for doing so is his claim to be Senesie's agent. Nonetheless, *Samantar* suggests that other avenues of immunity may be available to the appellants.

For the reasons that follow, we vacate the District Court's order and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

In 1984, CIGNA Worldwide Insurance Company ("CIGNA") began conducting business as an alien insurer in Liberia.[1] In the 1990s, as Liberia was torn apart by civil strife, CIGNA took steps to abandon its Liberian business operations. In July 1999, it assigned its Liberia-related assets and liabilities to ACE Limited ("ACE"), a Cayman Islands company.[2] Almost two decades of litigation stemmed from these decisions, beginning in 1991 and continuing to today.

## A.    Previous Actions in the United States and Liberia

---

[1] CIGNA characterized its Liberian operations as selling "property and casualty insurance in the nation of Liberia through agreements with local managing agents." Appellee's Br. 6.

[2] ACE operates entirely outside of the United States and its assets are also located abroad.

4

In 1991, Abi Jaoudi & Azar Trading Corp. ("AJA"), among others, brought an action against CIGNA in the Eastern District of Pennsylvania, alleging that CIGNA had breached insurance contracts by denying AJA coverage for property damage resulting from the Liberian Civil War. The issue before the District Court was "whether as a matter of law th[e] [political] turbulence [in Liberia] rose to the level of insurrection as defined in the war risk exclusion provisions contained in the insurance policies." *Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.*, 899 F. Supp. 1385, 1393 (E.D. Pa. 1995). A jury found for the plaintiffs; however, the District Court entered a judgment notwithstanding the verdict in favor of CIGNA. The plaintiffs appealed, and we affirmed. *See Younis Bros. & Co., Inc. v. CIGNA Worldwide Ins. Co.*, 91 F.3d 13 (3d Cir. 1996). The Supreme Court denied the plaintiffs' petition for *certiorari*.

In May 1998, AJA brought a new action against CIGNA in the Civil Law Court of Liberia, raising similar claims. CIGNA filed an answer in that matter and also entered motions to dismiss and for summary judgment. Those motions—which argued that the judgment of the District Court should be deemed *res judicata* in Liberian courts—failed. CIGNA then instructed its counsel to refuse to participate in the Liberian trial, which went forward without CIGNA. In October 2000, a jury found for the plaintiffs, imposing a judgment of over $66 million against CIGNA.

In April 2001, CIGNA sought an injunction in the Eastern District of Pennsylvania precluding AJA from collecting on its Liberian judgment. The District Court issued an injunction, which provided as follows:

5

> Plaintiffs [AJA] and Younis Brothers & Co., Inc. are prohibited and enjoined from initiating, maintaining, continuing[,] or taking any actions that conflict with, constitute an attack upon, or seek to nullify this Court's final order dated September 15, 1995, and the judgment entered pursuant thereto. Additionally, plaintiff [AJA] is prohibited and enjoined from taking any action to enforce in any jurisdiction the Liberian judgment against defendant CIGNA dated October 4, 2000.

*Younis Bros. & Co., Inc. v. CIGNA Worldwide Ins. Co.*, 167 F. Supp. 2d 743, 747 (E.D. Pa. 2001). In response, the Liberian court issued a similar order, enjoining the enforcement of the District Court's anti-suit injunction.

## B. Senesie and Lohman

Neither of the appellants before us—Senesie or Lohman—was involved in the actions noted above. Senesie is a Liberian citizen and was (when the current action began) its Commissioner of Insurance.[3] His actions in this case were all undertaken as a receiver appointed by a Liberian Court.[4] In April 2002, the Liberian government set up a

---

[3] Senesie retired as Liberian Insurance Commissioner in October 2009. His successor is Fodar Sesay, who automatically assumed Senesie's responsibilities as receiver over CIGNA's Liberian operations. Sesay intends to continue the Cayman Islands litigation against ACE referred to below and to pursue related claims against CIGNA. Therefore, as the Liberian Insurance Commissioner's counsel explained in a letter to us, this change does "not affect the justiciability of the controversy and do[es] not affect [our Court's] jurisdiction over this appeal."

[4] Section 5.13 of the Liberian Insurance Law provides for the appointment of a receiver over the Liberian operations of an alien insurer that has failed to comply with Liberian law. Under this provision, "[t]he Minister of Justice, at the request of the Commissioner [of Insurance], may apply to a court of competent jurisdiction on notice for an order appointing the Commissioner as receiver and directing him to liquidate the business of a domestic insurer or the Liberian branch of an alien insurer." App. 804. When serving as a receiver, the Commissioner remains under the supervision of the Liberian Civil Law Court.

Commission to investigate allegations of widespread violations of the Liberian Insurance Law by various foreign insurers, including CIGNA. Five years later, Liberia's Minister of Justice petitioned the Liberian Civil Law Court to appoint Senesie as receiver over the assets and affairs of CIGNA's Liberian operations. The same day Senesie was appointed as receiver, he retained Lohman as counsel. In his capacity as receiver, Senesie solicited and received proofs of claim from various Liberian creditors. Twenty-three creditors overall (including AJA) submitted proofs of claim against the Liberian operations of CIGNA.

AJA had previously retained Lohman as counsel, having done so in late 2003. A United States citizen (and member of the Oregon Bar), Lohman (then residing in Switzerland) assisted AJA in enforcing its Liberian judgment. In April 2006, he sent a demand letter to CIGNA, identifying himself as AJA's counsel and attempting to collect on that judgment. In May 2006, CIGNA sent a return letter, rejecting Lohman's demands and referring him to the District Court's order. Lohman responded by claiming that the District Court's order was "not enforceable in Liberia." App. 338. He nonetheless made no further demands on CIGNA.

In August 2007, CIGNA's Liberian liabilities were determined by an order of its Civil Law Court. In July 2008, Senesie sought to recover CIGNA's liabilities by bringing an action in the Cayman Islands against ACE. Lohman assisted Senesie as counsel during the Cayman Islands litigation. That action has since been stayed pending the resolution of this case.

**C.      The Emergency Motion for Contempt and the District Court's Order**

In November 2008, CIGNA filed in the District Court an emergency motion for contempt against AJA, Senesie, and Lohman for violating that Court's anti-suit injunction.  AJA did not participate in the civil contempt proceedings before the District Court, while both Senesie and Lohman challenged CIGNA's motion (in relevant part) on jurisdictional grounds.  The Court rejected the appellants' jurisdictional challenge, concluding that "both respondents [we]re properly before [it]."  *Abi Jaoudi & Azar Trading Corp. v. CIGNA Worldwide Ins. Co.*, No. 91-6785, slip op. at 2 (E.D. Pa. Jan. 12, 2009).

In its analysis, the District Court first considered whether it had personal jurisdiction over Senesie and Lohman.  It noted that, while our Circuit has not addressed related issues "directly," other Courts of Appeals have "held that minimum contacts exist where one has actively aided and abetted a party in violating a court order." *Id.* (citations omitted).  With this in mind, the District Court explained that "[t]here is evidence that Mr. Senesie, the Receiver, is acting to enforce, in part, the Liberian judgment that was the express object of Judge O'Neill's injunction." *Id.*  Therefore, "[f]or purposes of jurisdiction only," it found "that Mr. Senesie may be considered an aider and abettor of AJA." *Id.*  The Court similarly concluded that Lohman "may be haled into this Court," as he "is an active member of the Oregon bar" and "there is sufficient evidence that Mr. Lohman may have been 'aiding and abetting' the alleged violation of Judge O'Neill's order." *Id.*

8

The District Court also rejected Senesie and Lohman's jurisdictional challenge under the FSIA. It disagreed with their contention "that the [FSIA] shield[ed] [them] from this litigation." *Id.* In doing so, it "assum[ed], without deciding, that the FSIA applie[d] to individuals." *Id.* In any event, even if the FSIA applied here, "Senesie's acts, which could be performed by private parties, constitute[d] commercial activity that ha[d] effects in the United States," and thus triggered an exception to FSIA immunity. *Id.*

Both Senesie and Lohman appealed.

## II. Jurisdiction and Standard of Review

Ordinarily, we review only final decisions of the District Court. However, certain interlocutory orders are immediately appealable under the collateral order doctrine. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545-47 (1949). Under this doctrine, a district court order will be deemed "final" if it "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [would] be effectively unreviewable on appeal from a final judgment." *Johnson v. Jones*, 515 U.S. 304, 310 (1995) (internal quotation marks omitted).

With these requirements in mind, we have already recognized that a denial of a motion to dismiss based on sovereign immunity under the FSIA satisfies the collateral order doctrine. *See Fed. Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1281-82 (3d Cir. 1993). Here, the District Court's decision conclusively determined that Senesie and Lohman were subject to suit in the Eastern District of Pennsylvania. Even CIGNA

9

conceded that "[t]he District Court's denial of sovereign immunity is immediately appealable under the collateral order doctrine." Appellee's Br. 22. We agree, and thus have jurisdiction to consider the appellants' challenge to the District Court's FSIA ruling.

The District Court's determinations of law are subject to *de novo* review, while its findings of fact are reviewed for "clear error." *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 198-99 (3d Cir. 2003). "A determination of the existence of subject matter jurisdiction under the FSIA is a legal question subject to plenary review." *Fed. Ins. Co.*, 12 F.3d at 1282.

## III. Discussion

On appeal, Senesie and Lohman raise two challenges to the District Court's order: 1) that the District Court erred in holding that the FSIA did not immunize them from suit; and 2) that the Court lacked personal jurisdiction over them. We consider each argument in turn.

## A. The FSIA

The FSIA "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992). Under that framework, a "foreign state *shall* be immune from the jurisdiction of the courts of the United States and of the States unless one of several statutorily defined exceptions applies." *Id.* at 610-11 (emphasis in original) (internal quotation marks omitted). "The most significant of the FSIA's exceptions . . . is the 'commercial' exception of

10

§ 1605(a)(2) . . . ." *Id.* at 611. On appeal, Senesie and Lohman argue that the FSIA should apply to them as individuals and thereby render them immune from suit. However, this argument was recently foreclosed by the Supreme Court in *Samantar*.

Mohamed Ali Samantar was previously a high-level official in the Somalian government. Several natives of Somalia sought damages against him, claiming that they (or members of their families) were either tortured or killed during the years that Samantar served in the Somalian government. The "narrow" issue before the United States Supreme Court was whether the FSIA "provide[d] [Samantar] with immunity from suit based on actions taken in his official capacity." *Samantar*, 130 S. Ct. at 2282.

Prior to the Supreme Court's decision in *Samantar*, the majority rule was that the FSIA applied to such individuals. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 83 (2d Cir. 2008); *Keller v. Central Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir. 2002); *Byrd v. Corp. Forestal y Industrial de Olancho S.A.*, 182 F.3d 380, 388 (5th Cir. 1999); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996); *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1103 (9th Cir. 1990). Only the Fourth and Seventh Circuit Courts concluded otherwise. *See, e.g.*, *Yousuf v. Samantar*, 552 F.3d 371, 381 (4th Cir. 2009); *Enahoro v. Abubakar*, 408 F.3d 877, 881-82 (7th Cir. 2005). We have never opined on this important issue.

In *Samantar*, the Supreme Court endorsed the minority rule, concluding that "the FSIA does not govern [an individual's] claim of immunity." *Samantar*, 130 S. Ct. at 2292. This holding forecloses Senesie and Lohman's argument on appeal. Nonetheless,

11

as the Supreme Court suggested alternative paths to immunity in *Samantar*, we vacate the District Court's order and remand for further proceedings to allow the parties to address those possible options. We outline them below.

First, notwithstanding individual immunity under the FSIA now foreclosed by *Samantar*, foreign officials may still seek common-law immunity: "Even if a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under the common law." *Id.* However, the Court did not opine on "the precise scope" of this immunity, *id.* at 2290,[5] leaving that issue open on remand

Interestingly, the Supreme Court recognized the key role that the Executive Branch of our Government has traditionally played in the foreign sovereign immunity context. Prior to the enactment of the FSIA, "the [E]xecutive [B]ranch decided whether a foreign nation was entitled to immunity." *Enahoro*, 408 F.3d at 880. The standard procedure "was that the State Department would provide the court with a 'suggestion of immunity'

_____

[5] The Court also noted the possible connection between the FSIA analysis in certain Circuits and the common-law immunity inquiry that courts should apply post-*Samantar*:

> The [C]ourts of [A]ppeals have had to develop, in the complete absence of any statutory text, rules governing when an official is entitled to immunity under the FSIA. For example, Courts of Appeals have applied the rule that foreign sovereign immunity extends to an individual official "for acts committed in his official capacity" but not to "an official who acts beyond the scope of his authority." That may be correct as a matter of common-law principles, but it does not derive from any clarification or codification by Congress.

*Samantar*, 130 S. Ct. at 2291 n.17 (internal citation omitted).

12

and the court would dismiss the suit." *Id.* In *Samantar*, the Supreme Court

acknowledged that "the [State] Department has from the time of the FSIA's enactment

understood the Act to leave intact the Department's role in official immunity cases." 130

S. Ct. at 2291 n.19. The Government explained this process in its *amicus* brief in that

case:

> The Executive Branch traditionally provided the judiciary with suggestions
> of immunity, based on the Executive Branch's judgments regarding
> customary international law and reciprocal practice. When the Executive
> Branch made no specific recommendation, the courts decided the immunity
> question in conformity to the principles the Executive Branch had
> previously articulated.

Brief for the United States as *Amicus Curiae* Supporting Affirmance at 9, *Samantar*, 130

S. Ct. 2278 (No. 08-1555) (internal quotation marks and citations omitted).[6] With this

background in mind, a remand would permit the Executive Branch to offer its views (if

any) on the appellants' immunity in the present case.

Second, the Supreme Court explained that "not every suit can successfully be

pleaded against an individual official alone." *Samantar*, 130 S. Ct. at 2292.

> Even when a plaintiff names only a foreign official, it may be the case that
> the foreign state itself, its political subdivision, or an agency or
> instrumentality is a required party, because that party has "an interest
> relating to the subject of the action" and "disposing of the action in the

---

[6] As the Government noted in *Samantar*, "the scope of immunity for foreign officials is not necessarily co-extensive with that of foreign states—and can diverge in either direction." Brief for the United States, *supra*, at 13. *See, e.g.*, *Greenspan v. Crosbie*, No. 74 Civ. 473, 1976 WL 841, at *1-*2 (S.D.N.Y. Nov. 23, 1976) (accepting the Executive Branch's determination that foreign officials were immune from a fraud suit even as it involved commercial activities taken on behalf of the state from which the state itself may not be immune).

13

> person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."

*Id.* (*quoting* Fed. R. Civ. P. 19(a)(1)(B)). The Court added that, "[i]f this is the case, and the entity is immune from suit under the FSIA, the district court may have to dismiss the suit, regardless of whether the official is immune or not under the common law." *Id.*

Finally, the Supreme Court also noted that "it may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." *Id.* It then cited to *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), which discussed the differences between personal-capacity and official-capacity suits in the context of a dispute over attorneys' fees in a § 1983 action.

In this context, a remand is appropriate here to permit the District Court to consider the effect of *Samantar* in the first instance. This will permit the parties to make the related arguments and engage in discovery, if necessary. It will also allow the Executive Branch to weigh in with its views (if any) on the appellants' claims to common-law immunity.

**B.     Waiver**

CIGNA argues that Senesie and Lohman have waived their arguments under common-law immunity, as they did not raise them before the District Court or in their briefs before us. This is a plausible argument based on our standard waiver rule. "It is well established that failure to raise an issue in the district court constitutes a waiver of

14

the argument," unless certain "extraordinary circumstances" exist to conclude otherwise. *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).

With this waiver rule in mind, the appellants' failure to raise common-law immunity before the District Court or in their briefs to us is particularly concerning given that the question of individual immunity under the FSIA was still an open question in our Circuit. As such, we would expect a party to raise all available arguments—including common-law immunity. This is precisely what Samantar did before the District Court. Instead, Senesie's counsel only raised common-law immunity at oral argument. *See* Oral Arg. Tr. 10-11 ("Only if the FSIA immunity falls away, then there should be consideration of common law immunity . . . . As far as I can tell[,] [courts still ask the State Department for suggestions of immunity under the common law]."). CIGNA's counsel responded at oral argument by contending that "any suggestion that there is common law immunity . . . has been long since waived." *Id.* at 24. Senesie and Lohman did not respond to this waiver argument on rebuttal.

Nonetheless, we have previously recognized the need for flexibility in applying the waiver rule in similar situations. For instance, in *Salvation Army v. Department of Community Affairs of the State of New Jersey*, the plaintiffs only included a "fleeting assertion in the[ir] complaint that the Act [in question] interfere[d] with the freedom of association rights of [the Salvation Army][,] [which] was never expanded upon." 919 F.2d 183, 196 (3d Cir. 1990). On appeal, the Salvation Army relied heavily on that

15

argument, in light of new language in a then-recent Supreme Court opinion. When faced with the issue of waiver, we acknowledged the standard rule, but added that "the Supreme Court had emphasized that this practice should be applied flexibly," *id.*,[7] particularly where "a previously ignored legal theory takes on new importance due to an intervening development in the law." *Id.* "Without the teaching of [the new case], [the Salvation Army] was quite reasonable in believing . . . that its freedom of association claim would add little to its claim under the free exercise clause." *Id.* The same may be said of Senesie and Lohman's decision to devote their resources to the majority rule under the FSIA rather than pursuing alternative arguments (including common-law immunity) that have "take[n] on new importance" after *Samantar*.

In addition, there are also sensitive separation-of-powers concerns that counsel against finding waiver in this case. As the Government noted in *Samantar*, "[e]ven in an ordinary [official immunity] case, . . . the Executive might find it appropriate to take into account issues of reciprocity, customary international law and state practice, the immunity of the state itself, and, when appropriate, domestic precedents." Brief for the

---

[7] We quoted the Supreme Court in *Singleton v. Wulff*, where the Court explained its approach to waiver as follows:

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond doubt or where injustice might otherwise result.

428 U.S. 106, 120-21 (1976) (internal quotation marks and citations omitted).

16

United States, *supra*, at 24-25. The Government added that "[s]uch judgments are ordinarily committed to the Executive as an aspect of the Executive Branch's prerogative to conduct foreign affairs on behalf of the United States." *Id.* at 28. With these concerns in mind, a finding of waiver would arguably invade a province reserved for the Executive Branch.

For these reasons, we conclude that waiver should not apply here. On remand, the appellants may pursue common-law immunity arguments.

## C. Personal Jurisdiction

Finally, the appellants argued that the District Court lacked personal jurisdiction over them. Generally speaking, "the denial of a claim of lack of jurisdiction is not an immediately appealable collateral order." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 527 (1988). As such, we would only have jurisdiction over such a determination based on the doctrine of pendent appellate jurisdiction.

This doctrine "allows an appellate court in its discretion to exercise jurisdiction over issues that are not independently appealable but that are intertwined with issues over which the appellate court properly and independently exercises its jurisdiction." *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202-03 (3d Cir. 2001). Yet we have previously explained that pendent appellate jurisdiction is "a discretionary, though 'narrow[,]'" doctrine that "should be used 'sparingly,' and only where there is sufficient overlap in the facts relevant to both the appealable and nonappealable issues to warrant *plenary* review." *Id.* at 203 (*quoting*

*In re Montgomery County*, 215 F.3d 367, 375-76 (3d Cir. 2000)) (emphasis in original); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 199 (D.C. Cir. 2004) ("The exercise of pendent appellate jurisdiction is often suggested, occasionally tempting, but only rarely appropriate.").

In the end, we are only able to review the District Court's personal jurisdiction determination if we conclude that it is "inextricably intertwined" with the District Court's ruling on sovereign immunity or "necessary to ensure meaningful review of the appealable order." *E.I. Dupont*, 269 F.3d at 203. The appellants argued on appeal that the inquiry of whether their acts caused "direct effects" in the United States for purposes of jurisdiction under the FSIA overlaps with the question of whether they have minimum contacts with the United States sufficient to establish personal jurisdiction. Because we are not applying the FSIA's "direct effects" test in this appeal, we decline to exercise pendent appellate jurisdiction over Senesie and Lohman's personal jurisdiction challenge.

\* \* \* \* \*

For these reasons, we vacate the District Court's order and remand for further proceedings consistent with this opinion.

18