GILSON, J.A.D.
*253 *528 The question presented is whether New Jersey courts have jurisdiction to hear civil claims against foreign officials when the United States, through the State Department, has issued a suggestion of immunity (SOI) determining that those officials are entitled to immunity. We hold that New Jersey courts are bound by an SOI when, as here, the State Department's determination of conduct-based immunity is premised on the officials acting within the scope of their duties for a foreign sovereign nation. Therefore, we affirm the December 9, 2016 order dismissing plaintiff's civil complaint against six Israeli rabbinical judges and an official of the Rabbinical Religious Courts Administration of Israel (Rabbinical Courts of Israel).
I.
This appeal arises out of a protracted divorce and custody dispute between plaintiff, Sharon Ben-Haim, and his wife, Oshrat. The divorce and custody disputes were litigated in actions filed initially in Israel and later in New Jersey. The suit giving rise to this appeal is a separate action filed by plaintiff in New Jersey. In *529 that action, plaintiff sought to assert civil causes of action against the Rabbinical Courts of Israel, six Israeli rabbinical judges, and an official of the Rabbinical Courts of Israel.
Plaintiff and Oshrat are Israeli citizens and were married in Israel in 2008. Before their marriage, they lived in New Jersey and after their wedding they returned to continue living in New Jersey. They have one child, a daughter, who was born in 2009, in New Jersey.
In March 2010, the family traveled together to Israel. Shortly after arriving in Israel, Oshrat filed for divorce in an Israeli rabbinical court. Rabbinical courts are part of Israel's legal system and have jurisdiction over divorces between Jewish citizens of Israel. Israel also has secular family courts, and the family and rabbinical courts have parallel jurisdiction over issues concerning support, child custody, and division of property.
When Oshrat initiated the divorce action in the rabbinical court, she also obtained a ne exeat order, which prohibited plaintiff from leaving Israel until the divorce was finalized. Thereafter, a rabbinical court lifted that order and allowed plaintiff, by himself, to return to New Jersey. Oshrat and the daughter remained in Israel.
In August 2010, plaintiff filed an action in the Israeli family court, seeking the return of his daughter to New Jersey under *254 the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention). The Israeli family court ruled in plaintiff's favor and directed Oshrat to return the daughter to New Jersey.
Oshrat appealed that order. Eventually, the Israeli Supreme Court found that Oshrat had wrongfully detained the daughter in Israel. The Israeli Supreme Court also held, however, that plaintiff had consented to the daughter staying in Israel when he negotiated the lifting of the ne exeat order issued by the rabbinical court. Consequently, the Israeli Supreme Court did not require Oshrat to return the daughter to New Jersey.
*530 While the appeal to the Israeli Supreme Court was pending, plaintiff filed an action in the Superior Court of New Jersey, Chancery Division, Family Part (New Jersey Family Part). Like the action in the Israeli family court, the New Jersey Family Part action sought to compel the daughter's return to New Jersey under the Hague Convention.
In August 2011, after the Israeli Supreme Court had declined to compel the daughter's return, the New Jersey Family Part found that Oshrat had abducted the daughter in violation of the Hague Convention. Consequently, the New Jersey Family Part ordered Oshrat to return the daughter to New Jersey. Oshrat refused to obey that order. Thereafter, the New Jersey Family Part granted plaintiff a divorce and awarded him temporary custody of the daughter. Eventually, the Family Part issued a warrant for Oshrat's arrest, and Oshrat was criminally charged in New Jersey in connection with the daughter's abduction. The daughter, however, has never been returned to New Jersey and remains with Oshrat in Israel.
In the meantime, the rabbinical court awarded custody of the daughter to Oshrat. That court, however, could not grant a Jewish divorce because, under Jewish law, a wife seeking divorce requires the husband's consent. Plaintiff has refused to grant Oshrat a Jewish divorce, known as a "get." Israeli law gives rabbinical courts the authority to issue certain sanctions to pressure a non-consenting spouse to give consent to a get. Accordingly, to compel plaintiff to consent to the get, the rabbinical court issued a series of escalating sanctions against plaintiff. Ultimately, the rabbinical court issued an order finding that under Jewish law, plaintiff's refusal was criminal and that Jewish persons must avoid dealing with plaintiff. That rabbinical court order was sent to plaintiff's rabbi in New Jersey, and was published on several websites.
In April 2015, plaintiff filed a civil complaint in the Law Division in New Jersey. In his complaint, plaintiff asserted claims against the Rabbinical Courts of Israel, six Israeli rabbinical judges, and an official of the Rabbinical Courts of Israel. Specifically, plaintiff *531 contended that defendants aided and abetted in the kidnapping of his daughter, defamed him, and intentionally inflicted emotional distress on him.
Defendants removed the civil action to the federal district court on the basis of a federal question under the Foreign Sovereign Immunities Act (FSIA or Act), 28 U.S.C. §§ 1330, 1602 to 1611. The federal court found that the Rabbinical Courts of Israel was an agency of Israel and was entitled to immunity under the FSIA. After dismissing the claims against the Rabbinical Courts of Israel, the federal court remanded the action to the Law Division because it lacked subject matter jurisdiction to address the claims against the individual defendants.
The Israeli government then requested that the State Department recognize the *255 immunity of the remaining seven individual defendants. The State Department invited plaintiff to comment on that request for immunity. Thereafter, in December 2015, the State Department issued an SOI determining that all seven individual defendants were entitled to immunity from a civil suit in the United States, because they were all acting within the scope of their duties as rabbinical judges and an official of the Rabbinical Courts of Israel.
The State Department submitted the SOI to the Law Division. After allowing plaintiff to respond to the SOI, the Law Division heard oral argument on defendants' motion to dismiss. The Law Division then held that the State Department's SOI was binding on it and, therefore, it lacked jurisdiction to hear the claims against the individual foreign officials. Accordingly, on December 9, 2015, the Law Division entered an order dismissing plaintiff's complaint with prejudice. Plaintiff now appeals from the Law Division's order.
II.
The issue presented on this appeal is a legal question, which we review de novo. Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619, 159 A.3d 412 (2017) (citing *532 Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995) ). Specifically, we must determine if a New Jersey court is bound to follow the State Department's SOI for foreign officials. There are no reported cases addressing this issue in New Jersey. Accordingly, this appeal presents a question of first impression in New Jersey.
While New Jersey courts have not addressed this issue, federal law governs, and several federal courts have addressed the effect of an SOI from the State Department concerning immunity for foreign officials. Accordingly, we begin our analysis with the federal law governing foreign sovereign immunity.
The United States Constitution vests the power to regulate relationships with foreign nations with the Executive and Legislative branches of the federal government. Medellin v. Texas, 552 U.S. 491, 511, 128 S.Ct. 1346, 170 L.Ed.2d 190 (2008) ; see also Am. Ins. Ass'n v. Garamendi, 539 U.S. 396, 414, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003) ("While Congress holds express authority to regulate public and private dealings with other nations in its war and foreign commerce powers, in foreign affairs the President has a degree of independent authority to act."). Historically, the Executive branch of the federal government has defined the principles governing a foreign state's immunity from lawsuits in the United States. Garamendi, 539 U.S. at 414, 123 S.Ct. 2374 ; see also Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) ("Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident.").
The doctrine of foreign sovereign immunity initially developed under common law. Samantar v. Yousuf, 560 U.S. 305, 311, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010). In 1812, the United States Supreme Court recognized that "the United States had impliedly waived jurisdiction over certain activities of foreign sovereigns." Verlinden B.V., 461 U.S. at 486, 103 S.Ct. 1962 (citing *533 Schooner Exch. v. McFaddon, 11 U.S. (7 Cranch) 116, 146, 3 L.Ed. 287 (1812) ).
Under the common law, courts applied a "two-step procedure" to address claims of foreign sovereign immunity. Samantar, 560 U.S. at 311, 130 S.Ct. 2278. "Under that procedure, the diplomatic representative of the sovereign could request a 'suggestion *256 of immunity' from the State Department." Ibid. (citing Ex parte Peru, 318 U.S. 578, 581, 63 S.Ct. 793, 87 L.Ed. 1014 (1943) ). If the State Department granted immunity, it would file an SOI and the court would surrender its jurisdiction. Ibid. The State Department's determination concerning immunity was a "rule of substantive law governing the exercise of the jurisdiction of the courts[.]" Republic of Mex. v. Hoffman, 324 U.S. 30, 36, 65 S.Ct. 530, 89 L.Ed. 729 (1945). Consequently, if the State Department granted immunity, that decision was binding on the courts. Id. at 35, 65 S.Ct. 530 (explaining that it was "not for the courts to deny an immunity which our government has seen fit to allow").
If the State Department did not recognize the immunity, then a court "had authority to decide for itself whether all the requisites for such immunity existed." Samantar, 560 U.S. at 311, 130 S.Ct. 2278 (quoting Ex parte Peru, 318 U.S. at 587, 63 S.Ct. 793 ). "In making that decision, a district court inquired 'whether the ground of immunity is one which it is the established policy of the [State Department] to recognize.' " Id. at 312, 130 S.Ct. 2278 (alteration in original)(quoting Hoffman, 324 U.S. at 36, 65 S.Ct. 530 ).
Under the common law, the same two-step procedure was followed when addressing a claim of foreign sovereign immunity from both a sovereign state and a foreign official. Ibid. (noting that "cases involving individual foreign officials ... were rare, [but] the same two-step procedure was typically followed when a foreign official asserted immunity"). That similar process makes sense, because legal suits against foreign officials raise the same foreign relations concerns as suits against foreign nations. See Underhill v. Hernandez, 65 F. 577, 579 (2d Cir. 1895) ("[T]he acts of the official representatives of the state are those of the state *534 itself, when exercised within the scope of their delegated powers[.]").
In 1976, Congress enacted the FSIA. The Act provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [the Act]." 28 U.S.C. § 1604. The FSIA had "two primary purposes: (1) to endorse and codify the restrictive theory of sovereign immunity, and (2) to transfer primary responsibility for deciding 'claims of foreign states to immunity' from the State Department to the courts." Samantar, 560 U.S. at 313, 130 S.Ct. 2278. Under the restrictive theory, foreign sovereign immunity was limited to suits involving a foreign state's public acts, and did not extend to cases involving a foreign state's purely commercial acts. Id. at 312-13, 130 S.Ct. 2278.
In 2010, the United States Supreme Court clarified that the FSIA governs the determination of sovereign immunity for foreign states, but not for foreign officials. Id. at 320, 130 S.Ct. 2278 ; see also Wultz v. Bank of China, Ltd., 32 F.Supp.3d 486, 492 (S.D.N.Y. 2014) (noting that the FSIA only governs determinations of sovereign immunity for foreign states). The Supreme Court explained that when Congress enacted the FSIA, it did not intend to "eliminate [ ] the State Department's role in determinations regarding individual official immunity." Samantar, 560 U.S. at 323, 130 S.Ct. 2278. Consequently, when there is a suit against foreign officials, the question of immunity is governed by the common law and not by the FSIA.
In this case, the State of Israel sent diplomatic correspondence to the State Department requesting immunity for the individual defendants because they were acting within the scope of their authority as rabbinical judges and as an official of the Rabbinical Courts of Israel. The State Department evaluated that request and *257 considered plaintiff's opposition. The State Department then determined that the individual defendants were entitled to immunity. Accordingly, the State Department issued an SOI and that SOI was submitted to the Law Division. The Law Division correctly *535 accepted the SOI as binding and, therefore, the dismissal of plaintiff's complaint with prejudice for lack of jurisdiction was proper.
III.
Plaintiff makes three arguments on appeal. First, he contends that the Law Division had jurisdiction because defendants were not entitled to common law immunity and they were not engaged in official acts. Second, he argues that the concept of international comity did not provide defendants with immunity. Finally, he asserts that because his interests were "aligned" with the interests of his daughter, he should have been allowed to bring claims against defendants on her behalf. We reject these arguments because we hold that the State Department's determination of immunity was binding.
Plaintiff's primary argument is that the State Department's SOI was not controlling and the Law Division should have independently analyzed whether the individual defendants were entitled to immunity. Since the Supreme Court issued its decision in Samantar in 2010, three federal courts of appeals have published opinions directly addressing the effect of an SOI concerning foreign officials. See Manoharan v. Rajapaksa, 711 F.3d 178, 179 (D.C. Cir. 2013) (noting that when the State Department grants a request for an SOI, the court surrenders its jurisdiction); Habyarimana v. Kagame, 696 F.3d 1029, 1032 (10th Cir. 2012) ("For more than 160 years American courts have consistently applied the doctrine of sovereign immunity when requested to do so by the [E]xecutive branch ... with no further review of the [E]xecutive's determination."); Yousuf v. Samantar, 699 F.3d 763, 773 (4th Cir. 2012) (finding that the State Department's determination regarding conduct-based immunity is not controlling, but carries "substantial weight" in the court's analysis).[1]
*536 Three federal district courts have also published opinions addressing the effect of an SOI since Samantar was decided in 2010. See Lewis v. Mutond, 258 F.Supp.3d 168 (D.D.C. 2017) ; Fed. Ins. Co. v. Al Qaida, 122 F.Supp.3d 181 (S.D.N.Y. 2015) ; Moriah v. Bank of China, Ltd., 107 F.Supp.3d 272 (S.D.N.Y. 2015) ; Wultz, 32 F.Supp.3d 486 ; Rosenberg v. Lashkar-E-Taiba, 980 F.Supp.2d 336 (E.D.N.Y. 2013) ; Giraldo v. Drummond Co., 808 F.Supp.2d 247 (D.D.C. 2011). These district court cases did not involve an SOI filed by the State Department and, thus, each district court exercised its independent authority *258 to determine the applicability of foreign sovereign immunity under the common law. Nonetheless, each court stated that if an SOI had been submitted by the State Department, it would have been binding on the court.
All of those cases, with one exception, have recognized that an SOI from the State Department is binding on a court and, when the State Department finds that foreign officials are entitled to immunity, the court surrenders its jurisdiction to address civil claims against those foreign officials. The one exception to that absolute deference is a decision by the United States Court of Appeals for the Fourth Circuit. Yousuf, 699 F.3d at 773. In Yousuf, the Fourth Circuit, on remand from the Supreme Court in Samantar, held that an SOI suggesting conduct-based immunity *537 for a foreign official is not "controlling, but [ ] carries substantial weight in [a court's] analysis of the [immunity] issue." Ibid.
The Fourth Circuit's decision, however, is distinguishable from the facts of this case in two important aspects. First, in Yousuf, the State Department suggested that immunity not be granted to the foreign official. Id. at 777-78. Second, the claims against the foreign official in Yousuf involved claims of torture and extrajudicial killings. Such claims are violations of jus cogens norms. A jus cogens norm "is a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted ...." Belhas v. Ya'Alon, 515 F.3d 1279, 1286 (D.C. Cir. 2008) (quoting Vienna Convention on Law of Treaties art. 53, May 23, 1969, 1155 U.N.T.S. 332). Examples of jus cogens norms include prohibitions against genocide, torture, slavery, and summary-executions.
In this case, plaintiff's claims do not amount to violations of jus cogens norms. Instead, plaintiff seeks to assert civil claims against foreign officials for judicial acts. The State Department determined that those officials were acting within the scope of their official capacities for the Israeli government and, therefore, they were entitled to immunity from a civil suit in the United States. In Samantar, the United States Supreme Court held that such claims against foreign officials are governed by common law. It has long been established under common law that if the State Department determines that foreign officials are entitled to immunity that decision is binding on the courts. Thus, once a court receives an SOI from the State Department, it loses jurisdiction. Samantar, 560 U.S. at 311, 130 S.Ct. 2278 ; Hoffman, 324 U.S. at 34, 65 S.Ct. 530 ; Ex parte Peru, 318 U.S. at 588, 63 S.Ct. 793.
Next, plaintiff argues that the State Department's SOI is not binding in this case, because the foreign officials were allegedly violating jus cogens norms. We have already pointed out that plaintiff's allegations in this case do not constitute violations of jus cogens norms. Instead, plaintiff contends that Israeli rabbinical judges and a court official aided and abetted in the kidnapping of *538 his daughter, defamed him, and intentionally caused him emotional distress. Plaintiff's allegations relate directly to the individual defendants exercising their official and authorized duties in Israel. Such claims do not rise to the level of violations of jus cogens norms.
It is also worth noting that the federal district court determined that the Rabbinical Courts of Israel are an "agency or instrumentality" of the Israeli government. Ben-Haim v. Edri, No. 15-3877, 2015 WL 12839772, at *2, 2015 U.S. Dist. LEXIS 189525, at *5 (D.N.J. Oct. 1, 2015). Plaintiff did not appeal that decision to the Court of Appeals for the Third Circuit and, thus, that decision is binding on plaintiff. See *259 Velasquez v. Franz, 123 N.J. 498, 511, 589 A.2d 143 (1991) ("[I]t is well settled that 'a judgement, not set aside on appeal ... is equally effective as an estoppel upon the points decided.' ... Subsequent state suits cannot displace the proper resort to federal appellate practice." (citations omitted) ).
Accordingly, we need not address whether an SOI involving allegations of jus cogens violations is controlling on a court. Instead, we limit our holding and hold that an SOI is controlling on a court when the immunity determination is based on a finding by the State Department that foreign officials were acting within the scope of their authority for a foreign sovereign nation.
We also reject plaintiff's contention that the State Department's determination failed to take into account an opinion issued by the Attorney General of Israel and filed with the Israeli Supreme Court in the litigation between plaintiff and Oshrat. Here, the critical fact is that after the Israeli Attorney General issued that opinion, the government of Israel formally requested that the State Department grant immunity to the individual defendants because the claims related to acts performed in defendants' official capacities for the Rabbinical Courts of Israel. The State Department then independently evaluated that request, gave plaintiff a chance to respond, and found that defendants were entitled to immunity.
*539 Finally, plaintiff contends that he should be allowed to assert claims on behalf of his daughter. Whether the claims are asserted on behalf of plaintiff or his daughter, the defendants are still entitled to immunity.
Affirmed.

In addition, the United States Court of Appeals for the Second Circuit has directly addressed the effect of an SOI concerning foreign officials in non-precedential decisions reported in the Federal Appendix. See Rosenberg v. Pasha, 577 Fed.Appx. 22, 23-24 (2d Cir. 2014) ("[I]n the common-law context, we defer to the Executive's determination of the scope of immunity[.]"); Doe v. Zedillo Ponce de Leon, 555 Fed.Appx. 84, 85 (2d Cir. 2014) ("The United States filed a[n] [SOI] .... '[U]nder our traditional rule of deference to such Executive determinations,' the [SOI] is dispositive."). The United States Court of Appeals for the Third Circuit indirectly addressed the State Department's role in determinations of conduct-based immunity in a non-precedential decision reported in the Federal Appendix. Abi Jaoudi & Azar Trading Corp. v. CIGNA Worldwide Ins. Co., 391 Fed.Appx. 173, 179 (3d Cir. 2010) (recognizing that under the standard procedure, if the State Department filed an SOI the court "would dismiss the suit"). We cite these cases for the sake of completeness, noting that although the cases are reported in the Federal Appendix, they are not published and, therefore, do not constitute precedent.